# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1126

_____

| | | |
|---|---|---|
| Jesse D. House, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Arkansas. |
| The Paul Revere Life Insurance, | * | |
| Company; Hickory Springs | * | |
| Manufacturing Company, Inc.; | * | |
| Tim Isenhower, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: November 17, 2000

Filed: February 26, 2001 (Corrected March 9, 2001)

_____

Before BYE, HEANEY and FAGG, Circuit Judges.

_____

HEANEY, Circuit Judge.


Beginning in 1992, Jesse D. House was employed by Hickory Springs Manufacturing Company, and was covered by his employer's group long-term disability plan issued by The Paul Revere Life Insurance Company ("Paul Revere"). In February 1996, he applied for benefits under the policy based upon his inability to perform his occupation due to disability brought about by coronary artery disease. Paul

Revere initially denied House's application, but upon House's appeal granted benefits. After twenty-four months of benefits, the policy's definition of disability changed so that benefits would only be paid if House were unable to work in any occupation for which he was or might become suited by education, training, or experience. Paul Revere declined to provide benefits beyond the initial twenty-four months of "own-occupation" benefits.

House brought an action in the district court under the Employees Retirement Income Security Act of 1974 (ERISA) to overturn Paul Revere's denial. The district court[1] granted Paul Revere's motion for summary judgment, holding that the insurer did not abuse its discretion in terminating House's benefits. House appeals, and we reverse.

## I. BACKGROUND

According to the medical records upon which Paul Revere based its decision, House's health problems date back to 1988, when cardiologist Dr. Andre Nolewajka performed an angioplasty on House, who was then in his mid-forties. In February 1995, when House was working as a supervisor at Hickory Springs Manufacturing Company, his condition worsened, and he was admitted to the hospital with unstable angina. House, then fifty-two years old, was diagnosed with severe coronary artery disease, and received triple bypass surgery. Unfortunately, five months later, all of House's bypass grafts had become totally occluded, and it was necessary to repeat the bypass surgery. Five days later, House developed severe chest pain, and a permanent pacemaker was implanted.

---

[1]The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas.

House stopped working in October 1995.  In support of House's February 1996 application for disability benefits under the Paul Revere policy, Nolewajka reported that House was totally disabled due to coronary artery disease.  Nolewajka also completed a Cardiac Assessment Form, which classified House's condition according to a four-level scale.  Specifically, Nolewajka rated House as a Class II patient.  According to the form, Class II patients have "cardiac disease resulting in slight limitation of physical activity.  They are comfortable at rest.  Ordinary physical activity results in fatigue, palpitation, dyspnea, or anginal pain."  (Appellee's App. Vol. I at 52.)  In response to the form's question regarding House's prognosis, Nolewajka reported that House was disabled.

During House's appeal of its initial denial, Paul Revere obtained Social Security documents, which reflected that House had been granted Social Security benefits based on a disability onset date of February 1995.[2]  In June 1996, Paul Revere reversed itself and granted benefits after determining that job-related stress was a significant factor for aggravating House's condition.  Thereafter, Nolewajka submitted regular reports on House's condition, beginning in July 1996.  In the first such report, Nolewajka reported that House was disabled from his job and from any other work, and that he could never resume work without restrictions.  Nolewajka listed House's prognosis as "guarded." (Appellee's App. Vol. I at 187.)  Nolewajka submitted additional reports in January 1997, April 1997, August 1997, November 1997, February 1998, and May 1998. Each provided the same assessment of House's condition and prognosis.

Meanwhile, in April 1998, the policy's twenty-four months of "own-occupation" benefits expired; from that point, House was entitled to benefits if he was unable to work in any occupation.  In May 1998, Paul Revere requested that Nolewajka complete a second Cardiac Assessment Form.  This time, Nolewajka reported that House's

---

[2]Under the policy issued to House's employer, disability benefits under the policy were offset by Social Security benefits received.

condition had deteriorated, placing him in Class III. Class III patients are defined as "[p]atients with cardiac disease resulting in marked limitation in physical activity. They are comfortable at rest. Less than ordinary physical activity causes fatigue, palpitation, dyspnea, or anginal pain." (Appellee's App. Vol. I at 318.)

In July 1998, Paul Revere informed House that, based on the policy's new definition of disability, no further benefits were payable. House again appealed, submitting a letter in which Nolewajka observed that House "ha[d] severe coronary artery disease and should be considered totally disabled. . . . [U]nder no circumstances do I want him working. He is now and will continue to be totally disabled." (Appellee's App. Vol. II at 390.) Paul Revere was unsatisfied and in November 1998 asked Nolewajka for additional information, requesting that he supply comments as to House's medical suitability for several positions it had identified as possible new occupations for House.

In December 1998, Nolewajka responded that House "has significant coronary artery disease with ectatic vessels as well as left ventricular dysfunction." He noted that House "tried to go back to work after his second procedure, but was unable do so." (Id. at 518.) Nolewajka went on to state:

> It is my medical opinion that Mr. House is 100% totally disabled and will remain totally disabled for the rest of his natural life. This gentleman has very little cardiac reserve. He has very severe coronary artery disease. Because of the combination of not working and medications he is doing reasonably well, but he has no stamina. I feel that he may be a candidate for cardiac transplantation at some time in the future. This decision will be made as events obviously unfold. I will continue to monitor him on a regular basis.

(Id.)

Paul Revere rejected House's appeal in January 1999, informing him that Nolewajka failed to provide "any objective medical findings, test data, including data from any stress [sic] performed since October, 1996, and he did not address your ability from a medical standpoint to perform the occupations which we have identified that you are suited for, descriptions of which we sent him." (Id. at 523.)

In granting summary judgment for Paul Revere, the district court rejected House's argument that the insurer's determination should be subject to a more searching review because Paul Revere was both the plan's insurer and claims administrator. After examining the record, the court concluded that Paul Revere's determination had been rational. In particular, the court noted what it considered a "glaring omission" in the record: "Although [Nolewajka's December 1998 letter] states that Plaintiff unsuccessfully attempted to go back to work, the letter was written at a time when Plaintiff's job was admittedly of a stressful nature and involved supervisory tasks. Dr. Nolewajka's letter makes no mention of the possibility of Plaintiff performing a sedentary job." House v. Paul Revere Life Ins. Co., No. 99-2028, slip op. at 20 (W.D. Ark. Nov. 26, 1999).

## II. DISCUSSION

We review the district court's grant of summary judgment de novo. See Cash v. Wal-Mart Group Health Plan, 107 F.3d 637, 640 (8th Cir. 1997). Where, as here, an ERISA plan gives the administrator "discretionary authority to determine eligibility for benefits," we review the administrator's decision for an abuse of discretion. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Although conflicts of interest or procedural irregularities in the administrator's decision may prompt a more searching review, see Woo v. Deluxe Corp., 144 F.3d 1157, 1162 (8th Cir. 1998); Armstrong v. Aetna Life Ins. Co., 128 F.3d 1263, 1265 (8th Cir.1997), we find it unnecessary to address appellant's argument for heightened scrutiny, as Paul Revere's determination must be reversed under even abuse-of-discretion review.

-5-

Under the abuse-of-discretion standard, we must determine whether a reasonable person could have reached the same decision. See Wald v. Southwestern Bell Corp. Customcare Med. Plan, 83 F.3d 1002, 1007 (8th Cir. 1996). This inquiry focuses on the presence or absence of substantial evidence supporting the administrator's decision. See Woo, 144 F.3d at 1162. While the administrator's decision need not be supported by a preponderance of the evidence, there must be "more than a scintilla." Id. at 1162 (8th Cir. 1998).

Here, Paul Revere possessed not even a scintilla of evidence refuting the extensive documentation of House's severe heart disease supplied by the specialist who had treated House for a decade. The only evidence in the company's file concerning House's condition was that supplied by Nolewajka--evidence that unequivocally supported House's entitlement to benefits.

Moreover, even if the exhaustive supporting documents Nolewajka submitted could be dismissed as subjective, nothing in the terms of the plan support Paul Revere's demand for "objective medical evidence." The plan documents advise only that Paul Revere has "the right to investigate all submitted claims and . . . may require medical exams or written proof of financial loss. If We do require a medical exam or perform a financial audit, We do so at Our own expense and only as it reasonably is required." (Appellant's App. at 17.) The plan merely reserved Paul Revere's right to demand that a claim be supported by a medical examination or written proof, both of which House submitted.

If Paul Revere was dissatisfied with the medical evidence submitted by Nolewajka, it was entitled to require House to submit to an independent medical examination. Had it done so, Paul Revere would have been entitled to discount Nolewajka's opinion entirely in favor of a contrary opinion produced by the independent examiner. See Donaho v. FMC Corp., 74 F.3d 894, 901 (8th Cir. 1996)

("[W]here there is a conflict of opinion, the plan administrator does not abuse his discretion in finding that the employee is not disabled."). But Paul Revere cannot reject House's claim merely because his physician, having supplied the insurer with House's entire medical file, refused to accede to Paul Revere's badgering for more testing.

## III. CONCLUSION

Accordingly, the matter is remanded to the district court with instructions to order Paul Revere to grant benefits retroactively to July 21, 1998.[3] See Williams v. Int'l Paper Co., 227 F.3d 706, 715 (6th Cir. 2000) (where no factual determinations remain to be made, proper course is to retroactively grant ERISA disability benefits that were improperly denied).

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[3]Although House's period of own-occupation benefits expired on April 20, 1998, it appears that Paul Revere nevertheless paid benefits through July 21, 1998. (Appellee's App. Vol. II at 385.)