# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 00-1320/3673

_____

Brenda Fletcher-Merrit,

        Appellee,

v.

 NorAm Energy Corporation,

        Appellant.

\*
\*
\*   On Appeal from the United
\*   States District Court for the
\*   Western District of Arkansas
\*
\*
\*
\*

_____

Submitted: April 9, 2001
Filed: May 21, 2001

_____

Before BOWMAN and FAGG, Circuit Judges, and CARMAN,[1] Judge.

_____

CARMAN, Judge.

Appellant NorAm Energy Corporation (NorAm) appeals from the district court's determination that NorAm abused its discretion in denying Appellee Brenda Fletcher-Merrit long-term disability (LTD) benefits. NorAm argues the district court improperly applied an abuse of discretion standard by substituting its opinion for that of the plan administrator. NorAm also appeals from the district court's award of attorney's fees

_____

[1]The Honorable Gregory W. Carman, Chief Judge, United States Court of International Trade, sitting by designation.

and expenses to appellee. For the reasons stated below, we reverse and remand for action not inconsistent with this opinion.

### Factual and Procedural Background

Before receiving LTD benefits under NorAm's plan, an employee must be disabled for 130 days (not necessarily consecutive).[2] NorAm's benefits staff initiates the LTD claim process before an employee has been disabled for 130 days in order to avoid a delay in benefits once the employee completes the 130-day eligibility requirement. To qualify as disabled during the eligibility period, the employee must be unable, because of sickness, injury or pregnancy, to perform with reasonable continuity the material duties of her own occupation. A direct issue in this case is whether Brenda Fletcher-Merrit was unable, because of sickness or injury, to perform the material duties of her occupation. This court reviews whether the district court erred in holding that the plan administrator (NorAm's compensation and benefits committee) abused its discretion in denying LTD benefits to Brenda Fletcher-Merrit.

As a customer-service representative for NorAm, Brenda Fletcher-Merrit's responsibilities included: (1) receiving and processing customer payments; (2) communicating directly with customers concerning service requests, overdue accounts, complaints and inquiries; (3) preparing and/or reviewing collection orders; (4) transmitting and receiving electronic meter reading data; (5) providing clerical support; and (6) reviewing and correcting standard and special request reports.

---

[2]To continue to receive LTD benefits after meeting the 130-day eligibility requirement, an employee must prove total disability, meaning that: (1) during the first two years of LTD benefits the employee cannot perform the primary duties of her regular occupation; and (2) after two years of LTD benefits, the employee cannot perform the duties of any occupation for which the employee is or could be qualified by training, education, or experience. In addition, the employee must be under the care of a physician throughout the 130-day eligibility period and during receipt of benefits.

On March 11, 1996, Brenda Fletcher-Merrit left work to undergo bunionectomies. She was disabled for approximately 65 days, until her June 9, 1996 recovery date. The plan administrator considered whether Brenda Fletcher-Merrit fulfilled the LTD eligibility requirement by remaining disabled for approximately 65 days after her recovery from the bunionectomies but determined there was no evidence to support that the combination of her conditions or symptoms would restrict her from working as a customer service specialist.

On May 31, 1996, Brenda Fletcher-Merrit consulted Dr. Baxley, a cardiologist, regarding chest palpitations. On June 25, 1996, Dr. Baxley sent a letter to her employer stating his opinion that due to Brenda Fletcher-Merrit's medical conditions, she was not able to perform her job and he doubted she would ever be able to be gainfully employed. In July 1996, Brenda Fletcher-Merrit applied for LTD benefits, listing her illnesses as breast cancer and arthritis and her symptoms as headaches and chest, neck, back and foot pain. On the LTD Attending Physician Statement dated July 8, 1996, Dr. Baxley recommended Brenda Fletcher-Merrit stop working because of "multiple associated medical conditions aggravated by her job" and described her physical, mental and work activity limitations as headaches, arthritis, chest pain, and chronic neck, back, and foot pain.

NorAm, through Standard Insurance Company, reviewed the information submitted by physicians treating Brenda Fletcher-Merrit. The information included Dr. Baxley's May 31, 1996 summary of her stress echo study and his Cardiac Physician's Report to the insurance company, dated June 26, 1996, which discussed his diagnosis of Brenda Fletcher-Merrit's hypertension. On October 1, 1996, NorAm denied Brenda Fletcher-Merrit LTD benefits because it determined that none of her conditions disabled her from performing the material duties of her position. A review of the medical records found: no evidence of arthritis, a June 9, 1996 recovery date for her bunionectomies, no recurrence of breast cancer (which had been in remission since July 1993), normal CT scans regarding her headaches, no symptoms of depression and

anxiety severe enough to limit Brenda Fletcher-Merrit from working (and no evidence of regular care and treatment for depression and anxiety after June 20, 1996), and no trend in increased blood pressure readings that would indicate continuous limitation in her activities.

On October 11, 1996, NorAm informed Brenda Fletcher-Merrit that its decision to deny LTD benefits remained the same after Dr. Fancher, the insurance company's physician consultant, reviewed the exercise stress test results from Brenda Fletcher-Merrit's first visit to Dr. Baxley. It attached an October 4, 1996 memo in which Dr. Fancher stated Brenda Fletcher-Merrit's cardiac exam was within normal limits. He also stated that if she had an atrial tachycardia condition, she could perform light or sedentary work.

Brenda Fletcher-Merrit requested a review of the decision and also submitted evidence of carpal tunnel syndrome from a Dr. Houk. In a January 27, 1997 memo to Standard Insurance Company, Dr. Fancher discussed why each of Brenda Fletcher-Merrit's conditions should not impair her from working. On February 5, 1997, Standard Insurance notified Brenda Fletcher-Merrit that the October 1, 1996 denial of benefits was being upheld because neither her carpal tunnel syndrome nor the combination of her conditions impaired her from working in her own occupation. On March 7, 1997, an independent review by Standard Insurance Company's quality assurance unit agreed with the denial. On May 27, 1997, Brenda Fletcher-Merrit filed suit under the Employee Retirement Income and Security Act (ERISA) seeking LTD benefits under the LTD plan offered by NorAm. ERISA permits a plan beneficiary to sue to recover benefits due her under the terms of the plan. *See* 29 U.S.C. §1132(a)(1)(B).

On December 20, 1999, the district court entered an order in favor of Brenda Fletcher-Merrit and determined that NorAm abused its discretion in denying Brenda Fletcher-Merrit's claim for LTD benefits. The district court stated:

After carefully reviewing the stipulated record, the Court is persuaded that the decision by the administrator was unsupported by substantial evidence, and thus, was an abuse of discretion. Although the record reflects that the administrator through Standard and Quality Assurance gathered the medical records documenting plaintiff's claim, it ignored the evidence such as [her oncologist] Dr. Mariann Harrington who noted that plaintiff's back had felt better since she has [sic] been off work and the opinion of her regular treating physician, Dr. Baxley, that plaintiff should avoid stressful situations. In addition, [physician consultant] Dr. Francher admitted that he could not easily ascertain plaintiff's psychological condition and that [psychologist] Dr. Diner felt the claimant suffered from poly substance abuse in a depressive disorder, as well as a personality disorder and had moderate impairment to stressful work conditions. Although he clearly offered "to review any other records you might have or obtain pertaining to the claimant's mental health condition," no further inquiries were made of her mental health either in obtaining the prior records of her treatment from 1991 to 1993 or arranging for her to be evaluated in this crucial area. The numerous references throughout the records concerning plaintiff's anxiety and stress were dealt with by just observing that she had not sought treatment although the decision to discontinue treatment was not recommended by Dr. Diner. Her erratic behavior regarding her visits with Dr. Diner in light of her mounting health problems, significant life changes of being orphaned and married in just months, and Dr. Baxley's observations should not have been disregarded[,] thereby rendering the denial as being without substantial evidence.

*Brenda Fletcher-Merrit v. NorAm Energy Corp.*, No. LR-C-97-502 (E.D. Ark, Dec. 20, 1999) (order).

**Standard of Review**

The plan provides that "[t]he plan administrator has the right and responsibility to interpret the respective plan, to decide all issues concerning it, and to establish rules and procedures." Because the plan gives discretion to the plan administrator, the plan administrator's decision is reviewed for an abuse of discretion. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see also Layes v. Mead Corp.*, 132 F.3d 1246, 1250 (8th Cir. 1998). The court of appeals reviews a district court's application of the abuse of discretion standard *de novo. See McGarrah v. Hartford Life Ins. Co.*, 234 F.3d 1026, 1030 (8th Cir. 2000).

The court of appeals reviews an award of attorney's fees for an abuse of discretion. "An abuse of discretion occurs when the district court 'commits a clear error of judgment' in weighing the relevant factors." *Maune v. Int'l Bhd. Of Elec. Workers, Local No. 1, Health and Welfare Fund*, 83 F.3d 959, 964 (8th Cir. 1996) (quoting *Continental Assurance Co. v. Cedar Rapids Pediatric Clinic*, 957 F.2d 588, 594 (8th Cir. 1992)). The relevant factors to consider in determining whether fees and costs should be awarded in an ERISA action are: (1) the degree of culpability or bad faith assignable to the opposing parties; (2) the ability of the opposing parties to pay an award of attorney's fees; (3) the deterrent effect an award would have on others acting under similar circumstances; (4) whether the fees are requested to benefit other plan participants or to resolve legal issues specific to ERISA; and (5) the relative merits of the parties' positions. *See Lawrence v. Westerhaus*, 749 F.2d 494, 495-96 (8th Cir. 1984) (per curiam).

**Discussion**

Under the abuse of discretion standard, "the proper inquiry is whether the plan administrator's decision was reasonable; *i.e.*, supported by substantial evidence." *Donaho v. FMC Corp.*, 74 F.3d 894, 899 (8th Cir. 1996). In considering the

reasonableness of a plan administrator's fact-based disability determination, courts should consider whether the decision is supported by substantial evidence. *See id.* at 900. "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938). Both the quantity and quality of the evidence may be considered. *See Donaho*, 74 F.3d at 900.

Given the quantity of evidence considered, the plan administrator reasonably determined that Brenda Fletcher-Merrit was not disabled after her June 9, 1996 recovery from the bunionectomies. Only Dr. Baxley stated Brenda Fletcher-Merrit could not work, and he based his recommendation upon ailments treated by other physicians, none of whom stated Brenda Fletcher-Merrit could not work. The district court highlights the oncologist's comment that Brenda Fletcher-Merrit's back felt better since she had been off work, but the record contains no statement by the oncologist that Brenda Fletcher-Merrit could not work because of her back. In addition, the district court states that Dr. Diner, the psychologist, did not recommend a discontinuance of treatment for her anxiety and stress. However, in the psychiatric questionnaire completed for the insurance company, Dr. Diner stated Brenda Fletcher-Merrit was capable of working for her current employer and that her condition was not caused, or contributed to, by her employment. In reviewing Brenda Fletcher-Merrit's medical records, the plan administrator found no evidence of arthritis and no recurrence of breast cancer (which had been in remission since July 1993). In addition, the records indicated a June 9, 1996 recovery date for her bunionectomies and normal CT scans regarding her headaches (as well as an absence of treatment for vascular headaches after June 12, 1996). The quantity of evidence in the record supports the plan administrator's decision and is not "overwhelmed by contrary evidence." *Donaho*, 74 F.3d at 901.

The quality of the evidence relied upon by the plan administrator also supports a finding that the determination was reasonable. Dr. Fancher, the physician consultant,

addressed each of Brenda Fletcher-Merrit's conditions. In his memo to Standard Insurance Company, he stated that individuals with atrial tachycardia are not disabled from sedentary work and found Dr. Baxley's recommendation that Brenda Fletcher-Merrit could not work because of high blood pressure to be unwarranted after only one office visit. He stated that his own patients with hypertension can work absent unusual circumstances, and Brenda Fletcher-Merrit's hypertension was not so severe. He acknowledged the ambiguous nature of Brenda Fletcher-Merrit's psychological condition but anticipated that if psychological factors still caused her impairment, it would seem she would have continued to receive mental health counseling and psychiatric care. Because a reasonable mind might accept Dr. Fancher's evidence as adequate to support the conclusion that Brenda Fletcher-Merrit was not disabled after June 9, 1996, the plan administrator's determination was reasonable.[3]

A plan administrator's discretionary decision is not unreasonable merely because the reviewing court disagrees with it. *See Donaho*, 74 F.3d at 899. Because the plan administrator offered a reasonable explanation for its decision, it "should not be disturbed even if another reasonable, but different, interpretation may be made." *Id.* (quoting *Krawczyk v. Harnischfeger Corp.*, 41 F.3d 276, 279 (7th Cir. 1994)). The district court made another reasonable, but different, interpretation of the evidence when it focused upon the oncologist's statement that Brenda Fletcher-Merrit's back had felt better since being off work and when it considered Brenda Fletcher-Merrit's stress and anxiety as indicators of disability. However, in applying the abuse of discretion

---

[3]A reviewing physician's opinion is generally accorded less deference than that of a treating physician. *Donaho v. FMC Corp.*, 74 F.3d 894, 901 (8th Cir. 1996). However, the treating physician's opinion does "not automatically control, since the record must be evaluated as a whole." *Bentley v. Shalala*, 52 F.3d 784, 786 (8th Cir. 1995). We contrast this case with *House v. The Paul Revere Life Ins. Co.*, 241 F.3d 1045, 1048 (8th Cir. 2001), in which the specialist had treated his patient's severe heart disease for a decade and *Donaho*, 74 F.3d at 901, in which two treating physicians and an examining physician contradicted the reviewing physician's conclusions.

standard, the district court may not simply substitute its opinion for that of the plan administrator. The court must determine whether a reasonable person could have reached the same decision as the plan administrator. *See House v. The Paul Revere Life Ins. Co.*, 241 F.3d 1045, 1048 (8th Cir. 2001). Here, a reasonable person could have found the oncologist's statement about Brenda Fletcher-Merrit's back insufficient to indicate disability and could have concluded Brenda Fletcher-Merrit's psychological condition did not disable her because of her voluntary discontinuance of mental health counseling and her psychologist's statement that she was capable of working. Because substantial evidence supported the plan administrator's decision, the district court erred in its review for abuse of discretion.

The district court also erred in awarding attorney's fees of $6,875.00 and expenses of $324.25 to Brenda Fletcher-Merrit. The court of appeals reviews an award of attorney's fees for an abuse of discretion. "An abuse of discretion occurs when the district court 'commits a clear error of judgment' in weighing the relevant factors." *Maune v. Int'l Bhd. Of Elec. Workers, Local No. 1, Health and Welfare Fund*, 83 F.3d 959, 964 (8th Cir. 1996) (quoting *Continental Assurance Co. v. Cedar Rapids Pediatric Clinic*, 957 F.2d 588, 594 (8th Cir. 1992)). This court finds the district court committed a clear error of judgment in weighing the relevant factors. First, the plan administrator's decision to deny benefits, supported by substantial evidence, does not constitute culpable conduct. Second, although NorAm can pay an award of attorney's fees, this factor alone does not justify an award where the other factors dictate against one. *See Continental Assur. Co. v. Cedar Rapids Pediatric Clinic*, 957 F.2d 588, 595 (8th Cir. 1992). Third, an award would not deter others acting under similar circumstances. Fourth, an award would not benefit other plan participants or resolve significant legal issues specific to ERISA. Fifth, both parties' positions had merit. Attorney's fees should not have been awarded to Brenda Fletcher-Merrit.

Accordingly, we reverse and remand for action not inconsistent with this opinion.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.