# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 01-2886

_____

|  |  |  |
|---|---|---|
| Spencer Norris, Personal Representative of the Estate of Sue Pollock, | * * * | |
| Plaintiff/Appellee, | * * | |
| v. | * * * | Appeal from the United States District Court for the Western District of Missouri. |
| Citibank, N.A. Disability Plan (501), | * * | |
| Defendant/Appellant, | * * | |
| Aetna Life Insurance Company, | * * | |
| Defendant. | * | |

_____

Submitted: August 23, 2002

Filed: October 21, 2002

_____

Before HANSEN, Chief Judge, WOLLMAN, Circuit Judge, and OBERDORFER,[1] District Judge.

_____

WOLLMAN, Circuit Judge.

_____

[1]The Honorable Louis F. Oberdorfer, United States District Judge for the District of Columbia, sitting by designation.

This appeal arises out of Sue Pollock's claim for disability benefits. The district court[2] entered judgment against the defendant Citibank, N.A. Disability Plan (501) (the Plan) on a stipulated record. We affirm.

**I.**

Citibank, N.A. (Citibank), adopted the Plan for the benefit of its employees. Pollock was an account collector for Citibank Credit Services and a participant in the Plan. Aetna Life Insurance Company (Aetna) acted as the plan administrator.

The Plan includes two definitions of disability. During the first twenty-four months of an alleged disability, the employee will be deemed disabled if she cannot perform the job she previously held (the "own occupation" standard). After twenty-four months, however, the employee will be deemed disabled only if she cannot perform any job for which she is reasonably qualified (the "any occupation" standard).

In the spring of 1994, Pollock experienced severe back pain as the result of a herniated disc. Following two unsuccessful surgeries to reduce her pain, Pollock's doctor diagnosed her with severe back pain with radiculopathy, a disorder of the spinal nerves. Despite her attempts to continue working on a light duty schedule, Pollock's pain forced her to take disability. She was first placed on disability on April 29, 1994.

---

[2] The Honorable John T. Maughmer, Chief United States Magistrate Judge for the Western District of Missouri, to whom the case was submitted by the consent of the parties pursuant to 28 U.S.C. § 636(c).

Over the next two years, Pollock's pain prevented her from working on a full-time basis, although she did, at one point, attempt to work a reduced schedule. During this two-year period, she received several different prescriptions for Vicodin, a painkiller, and her doctor continued to believe she was disabled. Pollock also developed left side pain and pain in her leg that included radiation into her foot. An orthopedic surgeon advised Pollock that she was not an appropriate candidate for surgery because of the degree of her spinal stenosis. In October 1994, Pollock's doctor indicated that as a result of inoperable spinal stenosis, Pollock had "no potential to ever return to work." In March 1995, Aetna noted that Pollock had left side pain with bilateral neuropathy, inoperable spinal stenosis, degenerative joint disease, reduced sitting tolerance, and sleeping difficulties. Aetna also noted that Pollock had been approved for Social Security Disability Benefits. In August 1995, Pollock's doctor advised Aetna that Pollock had failed a job modification work station test because her sitting tolerance was less than 45 minutes. On April 10, 1996, Pollock's doctor again prescribed Vicodin.

During the two years after Pollock was placed on disability, Aetna continued to review her status, at all times concluding that she was eligible for disability benefits under the "own occupation" standard. In February 1996, Aetna's rehabilitation unit reviewed Pollock's file in preparation for the change from the "own occupation" standard to the "any occupation" standard. It concluded that Pollock was "unable to tolerate even part time sedentary work, so she [was] not reasonably employable . . . [and] it doesn't appear that rehab can assist in any way in making her more employable." On March 15, 1996, Aetna's case manager noted that Pollock had been unsuccessful with multiple attempts at working partial hours, that she was incapable of sitting more than one-half hour, that she was positive for spinal stenosis, that she was obese, and that she had multiple problems.

On May 23, 1996, Aetna's medical director spoke with Pollock's doctor. Based on this conversation, the medical director noted that Pollock might not be

permanently disabled, that she was on no pain medication, and that her pain "may not be that severe." During this conversation, Pollock's doctor also suggested that Pollock might be afraid to return to work. On June 27, 1996, Aetna conducted a rehabilitation review of Pollock's circumstances. The review reported that although "[Pollock's] treating [doctor] said she would be unable to tolerate even [part-time] sedentary employment" this doctor had also indicated that "[Pollock] could attempt a trial employment lifting max of 15 lbs with frequent changes of position."

Aetna sent Pollock a letter on June 28, 1996, noting that her time away from work began on April 28, 1994, and informing her that she was expected to be able to return to work on or before April 28, 1996. By letter dated June 28, 1996, Citibank advised Pollock that "[d]ue to the lack of sufficient clinical information . . . your period of disability could not be recertified." Citibank also advised Pollock that she could submit a written request for reconsideration within 60 days. On July 9, 1996, Citibank notified Pollock that because she had not returned to work, she was terminated, effective April 28, 1996. On July 10, 1996, Pollock sent Aetna a hand-written letter labeled "Appeal."

Earlier, on July 3, 1996, Aetna performed a functional capacity evaluation of Pollock. The tester reported that Pollock "did not do well" in the evaluation and that she seemed to be "self-limiting." On July 30, 1996, Aetna's medical director concluded that the functional capacity evaluation "showed symptom magnification and hence is not really valid" and that he doubted "that her pain is consistently that severe." A rehabilitation specialist then evaluated Pollock's vocational potential and concluded that there were several jobs Pollock could perform. All of these jobs were sedentary and directly related to the work she had previously performed for Citibank. After reviewing this evaluation, Aetna notified Pollock on August 29, 1996, that because it had concluded that she was capable of obtaining gainful employment, it was terminating her disability certification as of April 28, 1996. Pollock did not seek a review of this determination.

## II.

"ERISA provides a plan beneficiary with the right to judicial review of a benefits determination." Woo v. Deluxe Corp., 144 F.3d 1157, 1160 (8th Cir. 1998) (citing 29 U.S.C. § 1132(a)(1)(B)). Because it is undisputed that the Plan gives the administrator discretionary authority to determine eligibility for benefits, we review the administrator's decision for abuse of discretion. See id. "This deferential standard reflects our general hesitancy to interfere with the administration of a benefits plan." Layes v. Mead Corp., 132 F.3d 1246, 1250 (8th Cir. 1998) (citations omitted). Under the abuse of discretion standard, "the proper inquiry is whether the plan administrator's decision was reasonable." Fletcher-Merrit v. Noram Energy Corp., 250 F.3d 1174, 1179 (8th Cir. 2001) (internal quotations omitted). A plan administrator's fact-based disability decision is reasonable if it is supported by "substantial evidence." Id. "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Both the quantity and quality of evidence may be considered." Id. (internal quotations and citation omitted). Under this standard, a reviewing court should consider only the evidence that was before the plan administrator when the claim was denied. Layes, 132 F.3d at 1251. We review the district court's application of this standard de novo. Fletcher-Merrit, 250 F.3d at 1179.

## A.

We turn first to the issue of exhaustion. When an ERISA benefits plan clearly requires exhaustion, a claimant's failure to exhaust her administrative remedies bars her from seeking relief in federal court. See Layes, 132 F.3d at 1252. The parties in this case do not dispute that the Plan requires exhaustion. They do dispute whether Pollock did, in fact, exhaust her administrative remedies.

Although the Plan raised its failure-to-exhaust argument before the district court, the court entered no findings of fact or conclusions of law regarding exhaustion and made no mention of the issue in any of its decisions. Concluding that the question whether a plaintiff has exhausted her administrative remedies should not be determined in the first instance on appeal, we remanded the case and instructed the district court "[to] enter findings as to whether Pollock exhausted her administrative remedies." Norris v. Citibank, N.A. Disability Plan (501), No. 01-2886, slip op. at 3 (8th Cir. April 1, 2002) (citation omitted).

On remand, the district court concluded that Pollock satisfied the Plan's exhaustion requirement when she submitted her July 10, 1996, "Appeal." We agree with the district court. Pollock's disability claim was denied on June 28, 1996, when Citibank informed Pollock by letter that her "period of disability could not be recertified." In accordance with the procedures outlined in the letter, Pollock submitted her written request for review in a timely fashion.

The Plan contends, however, that the exhaustion requirement was not triggered until August 29, 1996, when Aetna advised Pollock that she was ineligible for long-term disability benefits under the "any occupation" standard. According to the Plan, the June 28, 1996, letters from Aetna and Citibank relate to the automatic expiration of Pollock's benefits under the "own occupation" standard, pursuant to the normal operation of the Plan's provisions. Thus, the Plan argues, the June 28, 1996, letters did not constitute a "termination decision." The Plan therefore concludes that because Pollock failed to appeal Aetna's August 29, 1996, determination denying benefits under the "any occupation" standard, she failed to exhaust her remedies under the Plan.

This argument, however, is contrary to the plain language of the Plan. Although the Plan does provide for a change in the definition of disability after twenty-four months, it does not provide for the automatic termination of benefits.

Article IV, Section 2 of the Plan outlines only five instances in which benefits may terminate: 1) the administrator determines the disability is terminated; 2) the beneficiary dies; 3) the beneficiary retires; 4) the beneficiary reaches a certain age; and 5) the beneficiary's employment is terminated for a specified reason. Standards two through five clearly did not apply to Pollock. Thus, in order to terminate Pollock's benefits, the plan administrator must have decided that Pollock's disability had terminated. We therefore conclude that because the June 28, 1996, letter from Citibank constituted a termination decision, her appeal of that decision fully exhausted her remedies under the Plan.

**B.**

Turning to the merits of Pollock's claim, we have little to add to the well-reasoned opinion of the district court. After reviewing the record, we agree that the plan administrator's conclusion regarding Pollock's ability to perform certain sedentary work is not supported by substantial evidence. As late as February 1996, Aetna's rehabilitation unit had determined that Pollock was "unable to tolerate even part time sedentary work" and was not "reasonably employable." A few months later, and on the basis of no new medical evidence, the administrator concluded that under the "any occupation" standard, Pollock could perform clerical, sedentary work that was directly related to her prior job at Citibank. In reaching this conclusion, Aetna's medical director apparently seized upon several equivocal statements by Pollock's primary care physician. This physician indicated that he was not currently prescribing Pollock any pain medication, that Pollock might try a job in which she could frequently change positions, and that Pollock might be afraid to return to work. Aetna's medical director also apparently relied on a neurologist's inability to identify the cause of Pollock's leg, arm, neck and head pain, as well as on the functional capacity evaluation, in which the tester reported that Pollock was "self-limiting" on parts of the test. This is, essentially, the only evidence that the Plan points to in support of its position. The Plan does not, however, address the extensive medical

-7-

evidence relating to Pollock's disability or the consistent conclusions of her doctors and various Aetna personnel that she could not work. As the district court noted, nowhere "do[es] [the Plan] attempt to reconcile [its] conclusions that in November 1995 [Pollock] was unable to perform the sedentary job of account collector at Citibank, but that in April 1996 she could perform the sedentary job of collection clerk, charge-account clerk or credit card analyst somewhere else."

We agree that there is little, if any, evidence in the record from which a reasonable person could find that Pollock was not disabled under the terms of the Plan. We therefore agree with the district court that the administrator abused its discretion in denying Pollock long-term disability benefits under the "any occupation" standard.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.