**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 04-1162**

---

BRENDA HENSLEY, an individual,

Plaintiff- Appellee,

versus

INTERNATIONAL BUSINESS MACHINES CORPORATION, a
New York Corporation; METROPOLITAN LIFE
INSURANCE COMPANY, a Delaware Corporation,

Defendants - Appellants,

and

DOES 1 THROUGH 10, inclusive,

Defendant.

---

**No. 04-1728**

---

BRENDA HENSLEY, an individual,

Plaintiff - Appellee,

versus

INTERNATIONAL BUSINESS MACHINES CORPORATION, a
New York Corporation; METROPOLITAN LIFE
INSURANCE COMPANY, a Delaware Corporation,

Defendants - Appellants,

and

DOES 1 THROUGH 10, inclusive,

                                        Defendant.

                          _____


Appeals from the United States District Court for the Southern
District of West Virginia, at Huntington.  Robert C. Chambers,
District Judge.  (CA-03-233-3; CA-03-223-3)

                          _____


Argued:  September 29, 2004        Decided:  December 13, 2004

                          _____


Before WILKINSON and LUTTIG, Circuit Judges, and Henry E. HUDSON,
United States District Judge for the Eastern District of Virginia,
sitting by designation.

                          _____


Reversed by unpublished opinion.  Judge Luttig wrote the opinion,
in which Judge Wilkinson and Judge Hudson joined.

                          _____


**ARGUED:** Beth Ann Oliak, METROPOLITAN LIFE INSURANCE COMPANY, New
York, New York, for Appellants.  Mark F. Underwood, Huntington,
West Virginia, for Appellee.  **ON BRIEF:** Scott A. Damron, DAMRON &
TAYLOR, Huntington, West Virginia; C. J. Schmidt, WOOD & LAMPING,
Cincinnati, Ohio, for Appellants.

                          _____


Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

LUTTIG, Circuit Judge:

Defendants-appellants International Business Machines Corp. ("IBM") and Metropolitan Life Insurance Co. ("MetLife") appeal from an order of the United States District Court for the Southern District of West Virginia granting summary judgment to plaintiff-appellee Brenda Hensley. The district court held that MetLife abused its discretion in terminating Hensley's long-term disability benefits under an ERISA-governed employee benefits plan. Because we conclude that MetLife did not abuse its discretion, we reverse the judgment of the district court.

I

Appellee Hensley was employed by IBM in a sedentary capacity as an "accounts specialist" prior to August 1999. During that time, she participated in a group long-term disability plan ("the Plan") administered by MetLife on behalf of IBM. The Plan is an employee welfare benefit plan within the meaning of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. According to the terms of the Plan, a "totally disabled" employee is entitled to long-term disability ("LTD") benefits. J.A. 191. "Totally disabled" is defined as follows:

> [T]otally disabled means that during the first 12 months after you complete the waiting period, you cannot perform the important duties of your regular occupation with IBM because of a sickness or injury. After expiration of that 12 month period, totally disabled means that, because of a sickness or injury, you cannot perform the

3

important duties of your occupation or of any other gainful occupation for which you are reasonably fit by your education, training or experience.

J.A. 193. The Plan also provides that the Plan's administrator "shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan." J.A. 213.

On August 9, 1999, Hensley applied for LTD benefits under the Plan, submitting a statement of her attending physician diagnosing her with osteoarthritis and rotator cuff syndrome. J.A. 726. MetLife initially granted her application for LTD benefits on November 9, 1999, but sought further information regarding her disability in January and March of 2000. A second attending physician submitted a letter to MetLife in April 2000 in response to these requests. He listed Hensley's diagnoses as morbid obesity, osteoarthritis, rotator cuff tendinitis, wrist tendon inflammation, carpal tunnel syndrome, and lower back pain, but he did not include objective tests or x-ray reports to substantiate these diagnoses. J.A. 463. An independent physician consultant reviewed Hensley's medical records on behalf of MetLife in August 2000 and concluded that the records showed no objective impairment that would prevent Hensley from returning to work. J.A. 425. On the consultant's recommendation, a functional capacity exam ("FCE") was performed on Hensley in March 2001 to assess her physical capabilities, but the physical therapist reported that Hensley did

4

not put forth a consistent effort during the tests and that Hensley exaggerated her pain complaints. J.A. 400-02. After the independent consultant concluded in a second review that Hensley had not produced medical evidence of incapacity for work, J.A. 390-91, MetLife terminated her benefits in November 2001.

In support of two subsequent appeals to MetLife, Hensley submitted another diagnosis letter from a third attending physician and the report from a second FCE. J.A. 115, 167. But the third doctor did not provide additional objective evidence to support Hensley's diagnoses, see J.A. 115-16, and the physical therapist again concluded that Hensley exaggerated her symptoms and engaged in self-limiting behavior, J.A. 168. MetLife denied Hensley's appeals.

Hensley sued IBM and MetLife for restoration of her benefits under the Plan in the district court in March 2003. J.A. 6. On cross-motions for summary judgment,[1] the district court granted summary judgment for Hensley, holding that MetLife abused its discretion as administrator of the Plan in terminating Hensley's LTD benefits. J.A. 31. The district court also awarded Hensley costs and fees. Order Granting Plaintiff's Motion for Attorney's Fees, Costs and Prejudgment and Postjudgment Interest at 1. IBM and MetLife appeal from both orders.

---

[1] The parties did not dispute any material fact in the record. J.A. 22.

5

We review the district court's grant of summary judgment de novo, applying the same standards employed by the district court. Gallagher v. Reliance Std. Life Ins. Co., 305 F.3d 264, 268 (4th Cir. 2002). Where, as here, an ERISA plan gives the administrator discretionary authority to interpret the terms of the plan, the district court reviews the administrator's decisions for abuse of discretion. Booth v. Wal-Mart Stores, Inc., 201 F.3d 335, 341 (4th Cir. 2000). Under the abuse of discretion standard, the court may not overturn the administrator's denial of benefits if the denial "is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." Elliott v. Sara Lee Corp., 190 F.3d 601, 605 (4th Cir. 1999) (quoting Brogan v. Holland, 105 F.3d 158, 161 (4th Cir. 1997)). Substantial evidence is more than a scintilla, but less than a preponderance. Newport News Shipbuilding and Dry Dock Co. v. Cherry, 326 F.3d 449, 452 (4th Cir. 2003).

Because MetLife both administers and funds the plan, however, we adjust the standard of review by decreasing our deference to MetLife in proportion to the degree of MetLife's conflict of interest. In such circumstances, we must determine whether the denial of benefits would constitute an abuse of discretion by a disinterested fiduciary. See, e.g., Bailey v. Blue Cross & Blue Shield of Virginia, 67 F.3d 53, 56 (4th Cir. 1995) ("[W]e will

review the merits of the [funding fiduciary's] interpretation to determine whether it is consistent with an exercise of discretion by a fiduciary acting free of the interests that conflict with those of the beneficiaries."). Even on this adjusted scale of deference, we conclude that MetLife did not abuse its discretion because its decision to terminate Hensley's benefits was the result of a deliberate, principled reasoning process and supported by substantial evidence.

A

It is apparent from the record that MetLife's decision to terminate benefits was the result of a "deliberate, principled reasoning process." The decision followed MetLife's multiple requests for information from Hensley's physicians, repeated reviews of her medical records by the independent consultant, and two appeals of the initial termination during which Hensley was permitted to provide supplemental medical evidence.

MetLife's decision to terminate Hensley's benefits might appear inconsistent with its prior determination in November 1999 that she was "totally disabled" under a functionally identical standard.[2] But the fact that MetLife initially awarded benefits to

_____

[2] The Plan's "regular occupation" definition of total disability applied to the April 1999 decision, while the "any occupation" definition applied to the November 2001 termination. But because this dispute focuses on Hensley's ability to perform any sort of sedentary labor at all, there is no practical

7

Hensley does not mean that its subsequent termination of those benefits was the result of unprincipled reasoning. The termination of benefits was based on further investigation and review,[3] during which Hensley's physicians failed to provide objective support for their diagnoses and Hensley failed to put forth credible efforts in two functional capacity exams. And, as the district court correctly noted, the Fourth Circuit has held that no vested right to benefits accrues under an employee welfare benefits plan, see Gable v. Sweetheart Cup Co., 35 F.3d 851, 855 (4th Cir. 1994), so that "the decision to grant benefits initially cannot create an obligation by which a plan fiduciary is estopped from later terminating benefits." J.A. 26.

B

We also conclude that MetLife's decision was supported by substantial evidence. As MetLife's consultant twice concluded, the record is largely devoid of objective medical evidence of total

---

difference between the two standards for the purposes of this appeal.

[3] This factor, among others, distinguishes the case upon which Hensley principally relies, Norris v. Citibank Disability Plan, 308 F.3d 880 (8th Cir. 2002). The Norris court emphasized that the plan administrator's denial of benefits came "a few months later, and on the basis of no new medical evidence," after a prior determination that the claimant was totally disabled. Id. at 885 (emphasis added).

8

disability, such as x-rays, test results or MRI reports.[4]  J.A. 391, 425.  Instead of objective evidence, Hensley relies principally on the diagnosis letters of her three treating physicians, Dr. Wazulak, Dr. Harvey, and Dr. Martin.  But none of these doctors provided objective evidence of disability to support his conclusions.  Dr. Wazulak's report of August 1999 listed nothing under "objective findings," but listed only subjective pain symptoms to support his diagnoses.  J.A. 726.  Likewise, Dr. Harvey's letter of April 2000 reported several pain-related diagnoses for Hensley, but admitted that Dr. Harvey did not have actual x-ray reports or reports from specialists substantiating these diagnoses.  J.A. 463.  And Dr. Martin's letter of December 2001 merely recited the same diagnoses as Dr. Harvey's, without providing additional objective medical evidence.  J.A. 115-16.

In the absence of <u>objective</u> evidence of Hensley's disability, it was reasonable for MetLife to conclude that the diagnoses of her treating physicians rested primarily or exclusively upon Hensley's <u>subjective</u> pain complaints.  But the results from her subsequent FCEs substantially undercut the credibility of those pain complaints.  Both physical therapists concluded that Hensley

---

[4] One exception is that a spine MRI performed on Hensley in April 2000 confirmed that she had degenerative disc disease.  That MRI, however, found no disc herniation.  J.A. 453.  A doctor examining Hensley and the MRI report at that time described her as "a middle-aged female in no acute distress" and noted that she had refused to undergo nerve conduction studies that might confirm the diagnosis of her carpal tunnel syndrome.  J.A. 455.

engaged in self-limiting behavior and symptom magnification during the FCEs. J.A. 167, 402. The report from the second FCE, which was performed upon the referral of her treating physician, emphasized Hensley's self-limitation:

> The results of this FCE do not represent a valid measure of Brenda's maximum functional capacities as she significantly limited her performance due to pain and, at the same time, demonstrated maximum signs of magnified illness behavior. . . . Her requests to terminate testing due to pain were made in conjunction with the lack of objective pain behavior and a pleasant, even jovial demeanor while rating her pain at a '9 out of 10.'

J.A. 168. Despite his inability to assess her full physical capacities, the therapist nevertheless concluded that Hensley was capable of "SEDENTARY" work under Department of Labor Standards. J.A. 167. Given that the Plan placed upon Hensley the burden of producing evidence of total disability, J.A. 193, and given her non-cooperation in both FCEs, it was reasonable for MetLife to conclude that Hensley was capable of sedentary occupation.

The district court reasoned that it was unreasonable for MetLife to credit the opinion of an independent consultant who had never treated Hensley, over the contrary conclusions of her treating physicians. J.A. 27 ("To rely solely on the opinion of an independent consultant physician who examined only medical records -- as opposed to examining the claimant -- in the face of the unanimity of the physicians who had examined the claimant . . . is arbitrary and capricious."). But the Supreme Court has explicitly held that ERISA plan administrators are not required to accord any

special deference to the opinions of <u>treating</u> physicians over those of non-treating consultants. <u>Black & Decker Disability Plan</u> v. <u>Nord</u>, 538 U.S. 822, 834 (2003) ("[C]ourts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician . . . ."). As noted above, MetLife had reason to believe that the treating physicians' diagnoses rested on subjective pain complaints whose credibility was undermined by the FCE tests, which were designed to assess actual functional capacities and to detect pain magnification. <u>See</u> J.A. 401 (evaluating Hensley's pain behavior during testing). In light of this evidence, it was reasonable for MetLife to discount the conclusions of Hensley's treating physicians.

The district court also emphasized that subjective pain complaints can often constitute a medically sound basis for diagnosis. J.A. 28 ("Merely because we cannot see pain or fatigue on an x-ray, or measure it in a laboratory, does not mean that it is not real." (quoting <u>Palmer</u> v. <u>Univ. Med. Group</u>, 994 F. Supp. 1221, 1233 (D. Or. 1998))). But the Fourth Circuit has held that denials of benefits are permissible where the claimant provides only subjective pain complaints and not objective evidence. <u>See</u>, <u>e.g.</u>, <u>Lown</u> v. <u>Continental Casualty Co.</u>, 238 F.3d 543, 546 (4th Cir. 2001) (upholding, on de novo review, the denial of benefits against the opinions of three treating physicians where the insurer "determined that [the claimant's] documentation was inadequate to

11

prove a total disability because of the lack of test results or other objective evidence to support the disability"); Ellis v. Metropolitan Life Ins. Co., 126 F.3d 228, 231 (4th Cir. 1997) (approving MetLife's reliance on a board of non-treating consultants over the opinions of treating doctors who credited the claimant's pain complaints but could not pinpoint their "etiology"). This preference for objective verification is all the more reasonable in light of the evidence of symptom magnification present in this case.

In sum, MetLife's decision to terminate Hensley's LTD benefits was the result of a deliberate, principled reasoning process. And the record clearly contains substantial evidence to support MetLife's conclusion. MetLife's decision thus did not constitute an abuse of discretion, even under the adjusted standard of review.

III

MetLife and IBM also appeal from the district court's award of pre- and postjudgment interest, costs, and attorney's fees. We review the district court's award for abuse of discretion. Metropolitan Life Ins. Co. v. Petitt, 164 F.3d 857, 865 (4th Cir. 1998). In awarding attorney's fees, the district court applied the five factors of Quesinberry v. Life Ins. Co. of North Am., 987 F.2d

12

1017, 1029 (4th Cir. 1993) (en banc).[5]  Here the district court
relied primarily on (1) the degree of opposing parties' culpability
or bad faith, and (5) the relative merits of the parties'
positions.  Order Granting Plaintiff's Motion for Attorney's Fees,
Costs and Prejudgment and Postjudgment Interest at 4.  In light of
our conclusion that MetLife did not abuse its discretion, neither
of these factors favors Hensley.  Therefore the district court's
order granting fees, costs, and interest is also reversed.


CONCLUSION

The judgment of the district court is reversed and the case is
remanded with instructions to enter judgment for appellants.

REVERSED

---

[5] The five factors are: (1) degree of the opposing parties'
culpability or bad faith, (2) the ability of opposing parties to
pay fees, (3) whether the fee award would deter others similarly
situated, (4) whether the parties requesting fees sought to benefit
other claimants or to resolve a significant ERISA-related legal
question, and (5) the relative merits of the parties' positions.
Quesinberry, 987 F.2d at 1029.

13