# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1517

_____

Daniel Johnson,                   *
                                 *

         Appellant,            *
                                   *    Appeal from the United States
    v.                            *    District Court for the
                                   *    District of Minnesota.
Bert Bell/Pete Rozelle NFL         *
Player Retirement Plan,            *
                                   *

         Appellee.             *

_____

Submitted: September 28, 2006
Filed: November 21, 2006

_____

Before WOLLMAN, BOWMAN, and BENTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Daniel Johnson appeals from the district court's[1] grant of summary judgment in favor of Bert Bell/Pete Rozelle NFL Retirement Plan (Plan) in his action brought pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001, et seq. We affirm.

_____

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota

## I.

Johnson played professional football from 1982 until 1988, when he suffered a career-ending back injury while diving for a pass. In August 1988, Johnson underwent surgery to repair the injury, but thereafter his condition continued to gradually degenerate. As a vested inactive professional football player, Johnson is eligible for disability benefits under the Plan if he becomes totally and permanently disabled. A player is considered to be totally and permanently disabled if he is "substantially prevented from or substantially unable to engage in any occupation or employment for remuneration or profit." Under the Plan, the Disability Initial Claims Committee (Claims Committee) decides all initial claims for disability benefits. The Plan's Retirement Board (Board) decides appeals from decisions made by the Claims Committee and renders final decisions on behalf of the Plan. If the Board is deadlocked concerning a decision, the dispute can be referred to a Medical Advisory Physician (MAP), whose opinion is final and binding on the Board.

Johnson first applied for total and permanent disability benefits under the Plan in October 2000, citing back problems resulting from his 1988 injury. The Plan had him undergo a medical examination with Dr. Edward Hanley, who concluded that Johnson was not totally and permanently disabled and could perform sedentary work. Based on this conclusion, the Claims Committee denied Johnson's claim. Johnson's appeal was denied by the Board.

On November 21, 2001, Johnson sought a medical opinion from Dr. Scott Middlebrooks, who concluded that Johnson was "disabled from any occupation." Johnson consequently reapplied for disability benefits in February 2002, whereupon the Plan again referred him to Dr. Hanley for an evaluation. In his March 14, 2002, opinion, Dr. Hanley answered "yes" to the question whether Johnson was totally disabled, but also remarked that Dr. Middlebrooks's diagnosis was consistent with Dr. Hanley's previous evaluation. Because Dr. Hanley had previously concluded that

Johnson was not totally and permanently disabled, the Claims Committee asked him to clarify his answer. Dr. Hanley replied that Johnson "could probably do sedentary work." Based on this information, the Claims Committee denied Johnson's second application for benefits.

Johnson appealed the Claims Committee's second denial, and the Plan referred him to Dr. Craig Chebuhar for another evaluation. On July 23, 2002, Dr. Chebuhar determined that Johnson was totally and permanently disabled and unable to return to any gainful employment, but also noted that this was a "difficult question." Thereafter, the Board sent Johnson to a MAP, Dr. Bernard Bach, for a final, binding determination regarding Johnson's disability status. On October 30, 2002, Dr. Bach concluded that Johnson was totally and permanently disabled. He also commented that he believed the disability had persisted for more than twelve months. Consequently, the Board awarded Johnson disability benefits at its January 2003 meeting and began paying him monthly benefits thereafter.

To determine the date when Johnson's disability became total and permanent, which would determine whether he was entitled to any retroactive benefits, the Board asked Johnson to submit additional evidence that would support a disability onset date earlier than January 1, 2003, including past tax records and Social Security earnings. Johnson provided past tax records and Social Security earnings, but did not provide any additional medical information. The Board found that Johnson's tax and Social Security records showed that he had received wage and self-employment income during most, if not all, of the years from 1988 through 2002. Based on this information and Dr. Chebuhar's report, the Board determined that the effective date of Johnson's total and permanent disability was July 23, 2002, the date on which Dr. Chebuhar found Johnson to be totally and permanently disabled. Accordingly, Johnson was entitled under the Plan to receive retroactive benefits as of August 1, 2002,– the first day of the month following the disability onset date. On appeal, the Board denied Johnson's request for an award of benefits prior to August 1, 2002.

Johnson then commenced this action, alleging that the Board abused its discretion when it denied his claim for retroactive benefits prior to August 1, 2002. It is from the district court's decision that the Board did not abuse its discretion that Johnson appeals.

## II.

"We review de novo the district court's grant of summary judgment, viewing the record in the light most favorable to the nonmoving party." Tillery v. Hoffman Enclosures, Inc., 280 F.3d 1192, 1196 (8th Cir. 2002). Because the Plan gives the Board the discretionary authority to construe the terms of the Plan and to determine eligibility for benefits, we review the Board's decision for abuse of discretion. Norris v. Citibank, N.A. Disability Plan (501), 308 F.3d 880, 883 (8th Cir. 2002). "This deferential standard reflects our general hesitancy to interfere with the administration of a benefits plan." Id. (quoting Layes v. Mead Corp., 132 F.3d 1246, 1250 (8th Cir. 1998)). Under the abuse of discretion standard, "we must affirm if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision." Wise v. Kind & Knox Gelatin, Inc., 429 F.3d 1188, 1190 (8th Cir. 2005) (quoting Ferrari v. Teachers Ins. & Annuity Ass'n, 278 F.3d 801, 807 (8th Cir. 2002)). To be reasonable, the decision must be supported by substantial evidence. Norris, 308 F.3d at 883-84. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 884 (quoting Fletcher-Merrit v. NorAm Energy Corp., 250 F.3d 1174, 1179 (8th Cir. 2001)).

Johnson contends that a less deferential standard should apply because the Board's composition creates a conflict of interest . While "[a] conflict of interest may trigger a less deferential standard of review," Tillery, 280 F.3d at 1197, no such conflict exists here. The Board is composed of an equal number of NFL management-appointed representatives and NFL player-appointed representatives and must reach

a majority vote on any disability determination. If a majority is not reached, the case can be forwarded to a MAP for a final, binding disability determination. Given this arrangement, there is no conflict of interest. See, e.g., Manny v. Central States, Southeast and Southwest Areas Pension and Health and Welfare Funds, 388 F.3d 241, 243 (7th Cir. 2004); Courson v. Bert Bell NFL Player Retirement Plan, 75 F.Supp. 2d 424, 431 (W.D. Pa. 1999). Accordingly, the Board's decision need not be subjected to a more stringent standard of review.

## III.

We turn to the question whether the Board abused its discretion when it set August 1, 2002, as the date when Johnson's disability became permanent and total. To support his argument that the Board abused its discretion, Johnson initially contends that the Board was bound by that portion of Dr. Bach's October 30, 2002, opinion which stated that Johnson's disability had persisted for more than twelve months. At the latest, this would establish October 30, 2001, as the date of onset and require the plan to make disability payments retroactive to November 1, 2001. Johnson therefore contends that the Board abused its discretion when it set Johnson's effective date as August 1, 2002, rather than in accordance with Dr. Bach's binding determination.

Under Section 8.3 of the Plan, the Board may call upon a MAP for a final and binding determination as to "whether a claimant medically is substantially prevented from or substantially unable to engage in any occupation or employment for remuneration or profit." Johnson asserts that this language makes Dr. Bach's opinion regarding the duration of the disability binding on the Board. The Board, which has the authority to interpret the Plan's provisions, does not consider itself bound by Dr. Bach's statement. We conclude that the Board's interpretation is reasonable. A plain reading of Section 8.3 suggests that the Board is bound to a MAP's opinion regarding whether a total and permanent disability exists, but not necessarily as to when the

disability became total and permanent. A determination regarding the onset date might well often be difficult for a MAP to make, for it typically requires a consideration of evidence that cannot be gleaned from a medical examination itself, such as the past employment and medical records of the claimant. Further, the physician report form that must be completed by a MAP does not ask the MAP to set an effective date for the total and permanent disability. Had the Plan intended such a determination to be binding on the Board, the MAP would likely have been asked to make this determination. For these reasons, we think it was reasonable for the Board to conclude that it was not bound by Dr. Bach's statement concerning the onset of the disability. Accordingly, the Board had the discretion to make such a determination, a discretion that it did not abuse by setting a date that was not in accordance with Dr. Bach's opinion.

Johnson further contends the Board abused its discretion when it refused to set an earlier effective date because its decision was not supported by substantial evidence. In making its determination, the Board examined Johnson's medical records and employment history and concluded that Johnson was not totally and permanently disabled until Dr. Chebuhar's July 23, 2002, examination. The Board relied primarily on Dr. Hanley's opinion and the earnings Johnson received from his landscaping business as evidence that Johnson was not totally and permanently disabled prior to that date. Johnson argues this decision was unreasonable because Dr. Hanley's opinion did not constitute substantial evidence and the earnings from Johnson's business should not have been considered. We disagree.

Johnson's medical history contained conflicting reports regarding the date of his disability. Dr. Middlebrooks opined that Johnson was totally and permanently disabled in November 2001. Dr. Hanley initially appeared to make a similar determination in his March 2002 report, but in April 2002 stated that Johnson "can probably do sedentary work." In October 2002, Dr. Bach found that Johnson was totally and permanently disabled and stated that "the disability has persisted for at

least twelve months." These opinions do not provide a clear picture as to the actual onset date of Johnson's total and permanent disability. The opinions of Dr. Middlebrooks and Dr. Bach can be interpreted to support a finding that Johnson was totally and permanently disabled on or around October/November 2001, whereas Dr. Hanley's opinion can be interpreted to contradict those opinions and show that Johnson could perform sedentary work as of March, 2002. Because Dr. Hanley was one of the Plan's neutral physicians and had earlier examined Johnson, the Board ultimately gave greater weight to his testimony and determined that it showed that Johnson was not disabled in November 2001. Johnson contends that Dr. Hanley's opinion did not constitute substantial evidence because his April 2002 statement was a short, conclusory remark that contradicted his March 2002 opinion rather than clarifying it.

Because Dr. Hanley's April statement was made in response to the Board's request for clarification, we think it was reasonable for the Board to interpret it as such and conclude that Dr. Hanley believed that Johnson was not totally and permanently disabled as of March 2002. Further, we do not think it was unreasonable for the Board to give greater weight to Dr. Hanley's opinion. The Board, as the plan administrator, had the authority to weigh the conflicting testimony and come to a reasonable conclusion. As recounted above, Dr. Hanley was a neutral physician who had experience working with the Plan and had earlier examined Johnson. Dr. Middlebrooks, on the other hand, was not a Plan physician, was retained by Johnson, and had never before examined him. As for Dr. Bach's opinion, the parties dispute whether his statement concerning the length of the disability was referring to total and permanent disability or some lesser form of disability. Given these circumstances, we think the Board's decision was reasonable.

As for Johnson's employment history, Johnson contends that the earnings he received as the owner of a landscaping business from 1999 until 2002 should not have been considered. Johnson claims that because as the owner/manager he was not

actively involved in any of the actual labor performed by the business, these earnings should have been excluded from consideration because the Plan provides that "[a] [p]layer will not be considered to be able to engage in any occupation or employment for remuneration or profit merely because such person . . . manages personal or family investments." The Board, however, interprets this provision as applying only when a player is managing an investment portfolio, and not when the player is managing or owning an active business. Again, the Board has the authority to construe the terms of the Plan, we are required to give deference to its interpretation, and we reverse only if it has abused its discretion. Leonard v. Southwestern Bell Corp. Disability Income Plan, 341 F.3d 696, 703 (8th Cir. 2003). Given the Plan's language, we cannot say the Board's interpretation was unreasonable or constituted an abuse of discretion. The Board therefore acted within its rights in considering Johnson's earnings from his landscaping business when determining the onset date of his permanent and total disability.

Given Johnson's medical records and employment history, we conclude that there is substantial evidence to support the Board's decision to set the effective date of permanent and total disability as August 1, 2002, rather than Johnson's proposed earlier date. Johnson's tax records showed that he had received earnings through 2002, and Dr. Hanley's opinion supported a finding that Johnson was not totally and permanently disabled as of March, 2002. Although there is evidence that would support an earlier effective date, a reasonable person could have concluded that Johnson's disability benefits should start on August 1, 2002. Accordingly, the Board did not abuse its discretion when it refused to set a start date earlier than this.

The judgment is affirmed.

_____