UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

KAY C. TUMBLESTON,
　　　　　*Plaintiff-Appellant,*

v.

A.O. SMITH CORPORATION,
　　　　　*Defendant-Appellee.*

⎱

No. 01-1738

Appeal from the United States District Court
for the District of South Carolina, at Florence.
Terry L. Wooten, Magistrate Judge.
(CA-99-1297-4-23)

Argued: December 5, 2001

Decided: January 16, 2002

Before MICHAEL and TRAXLER, Circuit Judges, and
Joseph R. GOODWIN, United States District Judge for the
Southern District of West Virginia, sitting by designation.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Martin Scott Driggers, Sr., DRIGGERS & MOYD, Harts-
ville, South Carolina, for Appellant. Derwood Lorraine Aydlette, III,
GIGNILLIAT, SAVITZ & BETTIS, L.L.P., Columbia, South Caro-
lina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Plaintiff Kay C. Tumbleston sued her employer A.O. Smith Corporation, pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), *see* 29 U.S.C.A. § 1001 - 1461 (West 1999 & Supp. 2001), following termination of her long term disability ("LTD") payments. On cross-motions for summary judgment, the district court denied Tumbleston's motion and granted Smith's motion. We affirm.

### I.

Prior to August 1994, Tumbleston was a customer service supervisor employed by Smith. As a Smith employee, Tumbleston was enrolled in Smith's benefits plan, which included provisions for the payment of LTD benefits under defined circumstances. Smith is the Plan Administrator for its Long Term Disability Plan (the "Plan"), and Provident Life and Accident acted as the Claims Administrator for the Plan.[1] The Plan is self-funded for the first five years of a claim, and thereafter is insured by a private insurer.

Under Smith's LTD Plan, an employee is considered totally disabled:

　　a.　during the first 24 months if the injury or disease prevents [the employee] from performing any and every duty of [her] occupation; and

　　b.　thereafter only if the injury or disease prevents [the employee] from performing any and every duty of every occupation for which [she is] qualified.

----

[1]Because Provident acted on Smith's behalf, we refer to the two together as the "Plan Administrator."

J.A. 37. However, with one exception not applicable here, benefits payable for a disability "[c]aused by [n]ervous or [m]ental [d]isease" are always limited to 24 months. J.A. 34. The parties agree that the Plan Administrator is given discretionary authority to determine eligibility for benefits and to construe the terms and provisions of the Plan.

In early August, 1994, Tumbleston left her employment with Smith and has never returned. On February 17, 1995, Tumbleston applied for LTD benefits under the Plan by completing an "Initial Claim for Group Long Term Disability Benefits." J.A. 49. Tumbleston claimed that her disability was job-related, with an onset date of August 2, 1994, and listed Dr. James Bell, her family physician, and Dr. Judith Tolhurst, her psychiatrist, as treating physicians. Her claim was initially supported by an "Attending Physician's Statement of Disability" completed by Dr. Bell. J.A. 51. In the "Diagnosis" section of the form, Dr. Bell listed Tumbleston's diagnoses as major depression and anxiety (created by job stress), panic disorder, and lumbosacral disc disease with sciatica. With regard to Tumbleston's disability, Dr. Bell opined that Tumbleston had been totally disabled since August 4, 1994, due to "interpersonal relationships that have led to confrontation," and stated that Tumbleston would not be able to return to work. J.A. 51. In addition, Dr. Bell indicated that Tumbleston's lifting capability was not applicable to her claim for disability, that her range of motion was not impaired, and that she had no "[c]ardiac [f]unctional [c]apacity" limitation. J.A. 51-52. According to Dr. Tolhurst's records, obtained by the Plan Administrator to evaluate the claim, Tumbleston had reported that in August 1994, her "boss jumped on her in front of [four] people [and] she quit on med[ical] leave per Dr. Bell." J.A. 61. Because Tumbleston had dropped out of treatment, however, Dr. Tolhurst offered no opinion as to whether Tumbleston could work.

In June 1995, the Plan Administrator asked Tumbleston to submit to an independent psychological evaluation by Jill Banks, Ph.D. Dr. Banks confirmed that Tumbleston suffered from "depression, insomnia, agitation, lack of self-confidence, indecisiveness, and inability to interact with others as she once did," apparently related at least in part to Tumbleston's prior interactions with her supervisor. J.A. 73. Dr. Banks opined that Tumbleston was "significantly depressed," that she

was "unable to cope with stressful situations," and that her depression "impair[ed] her ability to carry out work-related functions." J.A. 75. The Plan Administrator approved Tumbleston's claim for benefits in August 1995, but Tumbleston was encouraged at approximately the same time to consider rehabilitative services because her LTD benefits would terminate after 24 months.

During the ensuing 24 months, the Plan Administrator requested several updates from Tumbleston and Dr. Bell concerning Tumbleston's disability status. In February 1996, the Plan Administrator requested that a "Proof of Continuance of Disability" form be completed by Tumbleston and Dr. Bell. J.A. 81. On the form, Tumbleston indicated that "job stress" was the "injury or sickness causing [her] disability." J.A. 81. For his part, Dr. Bell again opined that Tumbleston's condition was due to "job stress creat[ing] major depression [and] anxiety," but listed no impairments in Tumbleston's range of motion or cardiac function. J.A. 82.

On August 7, 1996, Tumbleston suffered a lumbar compression fracture and was referred to Dr. Hassler, an orthopaedist, for treatment. Dr. Hassler treated Tumbleston until September 18, 1996, when she was released to be seen as needed. In October and November 1996, the Plan Administrator again requested "Proof of Continuance of Disability" from Tumbleston, and Tumbleston again advised that she was disabled from "job stress associated with [managers]." J.A. 89. Dr. Bell also remained consistent in his opinion that Tumbleston's disabling condition was the result of "job stress creat[ing] major depression [and] anxiety" and that there were no range of motion limitations. J.A. 88.

On February 2, 1997, Tumbleston's benefits expired under the 24-month limitation, prompting the Plan Administrator once again to request information from Dr. Bell. At this point, however, Dr. Bell completed a "Physical Capacities" assessment indicating, for the first time, and in sharp contrast to his earlier reports, that Tumbleston had significant physical limitations presumably resulting from her compression fracture and her history of lumbosacral disc disease. The Plan Administrator, in turn, requested information from Dr. Hassler, the orthopaedist who had treated Tumbleston a few months earlier. Dr. Hassler advised that, because Tumbleston had not returned to see

him after September 1996, he assumed that she was doing very well. In addition, Dr. Hassler completed a "Physical Capacities" assessment which indicated no physical limitations or restrictions and opined that Tumbleston had "no permanent partial disability" and "no restrictions for her work." J.A. 132.

In May 1997, the Plan Administrator notified Tumbleston that her LTD benefits would not be continued beyond the 24-month limitation period based upon a determination that she "would not be considered totally disabled from a physical standpoint" and that her "mental/nervous limit expired effective February 3, 1997." J.A. 136. In response, Dr. Bell wrote the Plan Administrator, stating that although Tumbleston's mental disorders were her predominant problem when he responded to the Plan Administrator's earlier inquiries, Tumbleston also suffered from physical problems that added to her disability. According to Dr. Bell, "[t]his was an error made by myself because she had these problems and I should have recorded them. If I had known she had a two year clause related to mental illness, I would have added these at that time." J.A. 140. Dr. Bell advised that he felt Tumbleston was totally and permanently disabled from "the summation of all [her] medical problems." J.A. 141. The Plan Administrator treated Dr. Bell's letter as an appeal and upheld the denial. Tumbleston then initiated this action.

## II.

### A.

We review the district court's grant of summary judgment *de novo*. *See Ellis v. Metropolitan Life Ins. Co.*, 126 F.3d 228, 232 (4th Cir. 1997). However, because the Plan gives the Plan Administrator discretionary authority to construe the terms of the Plan and determine Tumbleston's eligibility for benefits, we review the Plan Administrator's decision to deny continued LTD benefits for an abuse of discretion. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

Under this standard, the Plan Administrator's decision will not be disturbed if it is reasonable, even if this court would have come to a different conclusion independently. *See Feder v. Paul Revere Life Ins.*

*Co.*, 228 F.3d 518, 522 (4th Cir. 2000). "[A] decision is reasonable if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Ellis*, 126 F.3d at 232 (internal quotation marks omitted). Because the Plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, however, we must also weigh that conflict "in determining whether there [has been] an abuse of discretion." *Firestone*, 489 U.S. at 115; *see Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 342 (4th Cir. 2000). We reduce the amount of deference given to the fiduciary's decision and determine, based on review of the record before the fiduciary at the time of decision-making, whether the fiduciary's decision is consistent with a decision that might have been made by a fiduciary acting free of the interests that conflict with those of the beneficiaries. *See Ellis*, 126 F.3d at 233.

In *Booth*, we assimilated the criteria for determining the reasonableness of a fiduciary's decision, concluding that the court:

> may consider, but is not limited to, such factors as: (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Booth*, 201 F.3d at 342-43. In this case, the district court carefully applied these criteria and concluded that the Plan Administrator's decision to terminate Tumbleston's LTD benefits was not an abuse of discretion. Accordingly, the court denied Tumbleston's motion for summary judgment and granted Smith's motion for summary judgment.

On appeal, Tumbleston raises two primary challenges to the district court's ruling. First, Tumbleston asserts that the nervous or mental

disease limitation in the Plan is ambiguous as applied to her LTD claim and that the limitation should not be applied to her because her disability involves a combination of physical and mental conditions. Second, Tumbleston argues that the Plan Administrator violated its fiduciary duty to her and abused its discretion by classifying her disability as one "[c]aused by a nervous or mental disease," J.A. 34, and limiting her benefits to 24 months without clearly informing her of this classification.[2]

We have considered Tumbleston's arguments on appeal and find no error in the district court's disposition. Accordingly, we affirm the district court's order primarily upon its reasoning. *See Tumbleston v. A.O. Smith Corp.*, No. 4:99-1297-23BF (D.S.C. filed Feb. 23, 2001) (J.A. 147). We address below only those portions of Tumbleston's appellate arguments that require some elaboration.

### B.

We begin with Tumbleston's contention that the "nervous or mental" limitation of the Plan is ambiguous as applied to her claim. Specifically, Tumbleston asserts that it is unclear whether the "nervous or mental" disease limitation applies solely to disabilities caused by "nervous or mental" diseases, or whether it also applies to disabilities caused by a combination of physical and mental health conditions. She seeks a narrow interpretation of the limitation, which would render it inapplicable to disabilities that have both physical and mental causes, and contends that she falls outside its parameters.

Tumbleston's argument, however, misses the mark. Tumbleston ceased active employment with Smith following a conflict with her supervisor. She was awarded LTD benefits based upon reports offered by herself and her family physician, confirmed in substance by her

---

[2]Tumbleston's complaint does not contain a separate cause of action for breach of fiduciary duty. Rather, this argument appears to be offered as purported evidence of the Plan Administrator's motives and of the conflict of interest — factors which are to be weighed in determining whether the Plan Administrator abused its discretion in interpreting and applying the nervous or mental limitation to Tumbleston's claim for LTD benefits.

treating psychiatrist and an independent psychologist, that she was disabled solely as a result of the severe depression and anxiety caused at least in part by her interpersonal conflicts with others. For nearly two years, the nature of Tumbleston's disability was repeatedly confirmed by both Dr. Bell and Tumbleston herself to be a result of her major depression and anxiety. We have no trouble accepting that the common and ordinary meaning of "nervous or mental disease" would encompass Tumbleston's diagnoses of depression and anxiety, *see e.g.*, *Brewer v. Lincoln Nat'l Life Ins. Co.*, 921 F.2d 150, 154 (8th Cir. 1990); *Lynd v. Reliance Standard Life Ins. Co.*, 94 F.3d 979, 983-84 (5th Cir. 1996), and that it was reasonable to conclude that Tumbleston was permanently disabled solely as result of her nervous or mental diseases. Accordingly, we conclude that the Plan's "nervous or mental" limitation is not ambiguous as applied to Tumbleston's condition and that the Plan Administrator did not abuse its discretion in concluding that the provision applied to Tumbleston's claim for benefits.[3]

We are likewise unpersuaded by Tumbleston's argument that the Plan Administrator breached its fiduciary duty and abused its discretion by not sufficiently informing her that it was classifying her disability as having been caused by a nervous or mental disease. Specifically, Tumbleston asserts that the Plan Administrator classified her disability as being "nervous or mental" in nature in order to thwart and limit her benefits, that she was never made aware that the Plan Administrator classified her disability as being caused by a nervous or mental disease and, indeed, that "to the best of [her] knowledge [she] was never told and [she] never understood that [she] had a mental disease." J.A. 23.

---

[3]Tumbleston relies heavily upon the decision in *Cothran v. Reliance Standard Life Ins. Co.*, No. 99-1238, 1999 WL 1092644 (4th Cir. Dec. 3, 1999), which Tumbleston argues is "strikingly similar" to her facts. The district court disagreed, and so do we. In particular, we are satisfied that the nervous or mental limitation in Smith's LTD Plan is not ambiguous as applied to Tumbleston's disabling conditions. In addition, we note that under our internal rules, unpublished opinions are not precedential. Indeed, "[i]n the absence of unusual circumstances," we are bound as a court "not [to] cite an unpublished disposition in any of [our] published opinions or unpublished dispositions." Local Rule 36(c). No such unusual circumstances are present here.

Having reviewed the administrative record, we are unpersuaded. Tumbleston's initial claim for disability, accompanied by medical support from Dr. Bell, refers only to an alleged disability arising from her depression and anxiety and, in particular, her inability to successfully engage in the interpersonal relationships required in her position. There is at best a perfunctory reference by Dr. Bell to *diagnoses* of physical conditions in the section of the claim form requesting such information, but there is no reference to a physical *disability*, existing either alone or in combination with Tumbleston's disabling mental conditions. Based upon the information submitted by Tumbleston, the Plan Administrator notified Tumbleston that her claim for LTD benefits was being approved. The Plan clearly states that disability claims for nervous and mental diseases are limited to two years, and Tumbleston was made aware at the time her claim was accepted that her benefits were scheduled to terminate after 24 months. At no time thereafter did Tumbleston seek or obtain benefits in whole or in part for a physical disability resulting from her lumbosacral disc disease or any other physical malady. In every update requested and received by the Plan Administrator thereafter, Tumbleston and Dr. Bell both held firm in their opinion that Tumbleston's disability was related to her depression and anxiety, and Dr. Bell held firm in his opinion that Tumbleston had no physical limitations or restrictions even after she was released from the care of her orthopaedist.

In sum, Tumbleston's argument fails on two levels. First, the record is utterly devoid of any indication that the Plan Administrator tried to improperly limit her benefits by classifying Tumbleston's claim as one for disability resulting from a nervous or mental condition, as opposed to a physical disability, or tried to hide that classification from Tumbleston. On the contrary, Tumbleston and her family physician classified her disability as resulting from major depression and anxiety from the outset, and we see no indication that her claim should have been interpreted as one arising from anything other than her nervous or mental diagnoses. Second, we find no abuse of discretion in the Plan Administrator's determination, rendered at the conclusion of the 24-month period and based upon the reports of Drs. Bell and Hassler, that Tumbleston had failed to demonstrate that she was totally and permanently disabled as a result of her physical maladies alone. *See Booth*, 201 F.3d at 345 ("[I]t is not an abuse of discretion

for a plan fiduciary to deny benefits where conflicting medical reports were presented.") (internal quotation marks and ellipsis omitted)).

To conclude, we agree with the district court's determination that the Plan Administrator did not abuse its discretion by terminating Tumbleston's LTD benefits under the provisions of the Plan which limit such benefits to 24 months in circumstances such as these. The Plan provides that LTD benefits for a "nervous or mental" disease are limited to a 24-month period. Tumbleston was found to be totally disabled from "major depression and anxiety" arising from "job stress" and an inability to successfully engage in interpersonal relationships necessary to perform her employment duties, conditions which fall easily within the ordinary meaning of a "nervous or mental disease," and Tumbleston drew LTD benefits for the entire 24-month period. After the 24 months had passed, the Plan Administrator reasonably concluded that Tumbleston had not demonstrated that she was physically disabled from "performing any and every duty of every occupation for which [she was] qualified," J.A. 37, and denied her claim for continued benefits. Applying the modified abuse of discretion standard to the record before us, we are satisfied that the Plan Administrator's denial of LTD benefits was not an abuse of discretion.

## III.

For the foregoing reasons, the judgment of the district court is affirmed.

*AFFIRMED*