Sabrina HARLEY, Plaintiff,

v.

**INTERNATIONAL PAPER COMPANY LONG TERM DISABILITY PLAN,** Defendant.

C.A. No. 9:07–623–PMD.

United States District Court, D. South Carolina, Beaufort Division.

Dec. 27, 2007.

Nathaniel W. Bax, Foster Law Firm, Robert Edward Hoskins, Foster and Foster, Greenville, SC, for Plaintiff.

Cara Y. Crotty, Constangy Brooks and Smith, Columbia, SC, Mary Jane Palmer, International Paper Company, Memphis, TN, for Defendant.

### ORDER

PATRICK MICHAEL DUFFY, District Judge.

■ This matter is before the court upon the parties cross-motions for judgment. Plaintiff Sabrina Harley ("Harley" or "Plaintiff") asserts entitlement to certain benefits pursuant to the Employee Retirement Income Security Act, and she also seeks an award of attorney's fees. *See* 29 U.S.C. § 1132(a)(1)(B); *see also* 29 U.S.C. § 1132(g). The parties have entered into a Joint Stipulation agreeing to certain relevant facts, and the parties also agreed that the court may dispose of the matter based upon cross-motions for judgment.[1]

### BACKGROUND

The parties have stipulated that Plaintiff seeks benefits pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B), and a claim for attorney's fees pursuant to 29 U.S.C. § 1132(g). The parties also agreed that Plaintiff has exhausted her administrative remedies under the International Paper Company Long Term Disability Plan (the "Plan") for her long term disability claim. Furthermore, the parties have agreed which documents constitute the administrative record. Plaintiff and Defendant agree that the abuse of discretion standard applies to the case and that the issue before the court is thus whether Defendant's denial of Plaintiff's claim for long term disability benefits constitutes an abuse of discretion.

Plaintiff was born on August 10, 1958, and she went to work for Westinghouse (which later became International Paper Company) and continued to work there for approximately eight years. (AR 00014, 00884.) Plaintiff's last day of work at International Paper was May 6, 1998, and she held the position of Storeroom Assistant on that date. (AR 00100.) While employed at International Paper, Plaintiff participated in the long-term disability plan and was thus eligible to apply for benefits.

The Plan defines "disability" as follows: To receive LTD [ (long-term disability) ] benefits, you must be totally disabled. For the first year you are disabled, your disability is considered "total" if it keeps you from doing each and every duty of your regular job. After the first year, you are considered totally disabled if you cannot do any gainful work (either in or outside Westinghouse) for which you are suited by education, training or experience.

(AR 01644.)

On May 7, 1998, Plaintiff was injured when the car she was driving was struck by an eighteen-wheel truck. (AR 00883.) On or about June 1, 1998, Plaintiff applied for and received short term disability benefits, and the diagnosis section of the claim form indicates Plaintiff suffered from sinusitis and migraines. (AR 00846–47.) On March 8, 1999, Plaintiff made her initial claim for long term disability benefits, describing her disability as "chronic headaches," "neck pain," and "lower back pain." (AR 00099.) Her claim for long term disability benefits was approved and was paid for approximately seven years. Then, on January 13, 2006, the Plan administrator

---

1. The Fourth Circuit has recognized that the parties may agree to dispose of ERISA governed benefit claim cases by way of cross-motions for judgment while doing away with the summary judgment standard. *See Bynum v. CIGNA Healthcare of N.C., Inc.,* 287 F.3d 305, 311 n. 14 (4th Cir.2002).

sent a letter to Plaintiff indicating that it was terminating her benefits effective January 1, 2006, for failure to submit requested records. (AR 00077.) On January 23, 2006, the Plan administrator received a facsimile that noted Plaintiff's treating physicians as "mental health and Dr. Cary Fetcher." (AR 00085.) The facsimile, which is dated January 7, 2007, indicates that Plaintiff is totally disabled from any job due to migraines, back trouble, and depression. (AR 00085.) However, the Plan administrator did not reinstate Plaintiff's benefits, and Plaintiff appealed the decision to terminate benefits on May 18, 2006. (AR 00076.) Having exhausted her administrative remedies, the matter is before this court for disposition.

### STANDARD OF REVIEW

■ "[A] court reviewing the denial of disability benefits under ERISA initially must decide whether a benefit plan's language grants the administrator or fiduciary discretion to determine the claimant's eligibility for benefits...." *Gallagher v. Reliance Standard Life Ins. Co.*, 305 F.3d 264, 268 (4th Cir.2002) (citing *Feder v. Paul Revere Life Ins. Co.*, 228 F.3d 518,

522 (4th Cir.2000)). If the plan language grants discretion to the administrator, the court reviews the denial under an abuse of discretion standard. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Johannssen v. Dist. No. 1–Pac. Coast Dist., MEBA Pension Plan*, 292 F.3d 159, 168 (4th Cir.2002). Otherwise, the appropriate standard of review is *de novo*. *See Firestone Tire & Rubber Co.*, 489 U.S. at 111, 115, 109 S.Ct. 948; *Johannssen*, 292 F.3d at 168.

■ Under the abuse of discretion standard, the " 'discretionary decision will not be disturbed if reasonable, even if the court itself would have reached a different conclusion.' " *Smith v. Continental Cas. Co.*, 369 F.3d 412, 417 (4th Cir.2004) (quoting *Booth v. Wal–Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 341 (4th Cir.2000)). This means that so long as the denial of benefits is the result of " 'a deliberate, principled reasoning process and ... is supported by substantial evidence,' " it will not be disturbed. *Brogan v. Holland*, 105 F.3d 158, 161 (4th Cir. 1997) (quoting *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 787 (4th Cir.1995)).[2]

**2.** In an unpublished opinion, the Fourth Circuit clarified the reasonableness inquiry, stating,

This court has alternatively framed reasonableness as an open-ended inquiry that may, in addition to other relevant issues, consider the following eight factors: "(1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict

of interest it may have." *Booth v. Wal–Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 342–43 (4th Cir.2000). We have never explicitly overruled *Booth*'s facially more expansive test of reasonableness. Recent decisions have embraced both standards. *Compare Stup [v. UNUM Life Ins. Co. of America]*, 390 F.3d [301,] 307 [ (4th Cir.2004) ] (defining reasonable decisions as those that are "the result of a deliberate, principled reasoning process" and that are "supported by substantial evidence" (citations omitted)), *with McCoy v. Holland*, 364 F.3d 166, 170 (4th Cir.2004) (holding that courts "may consider many factors in determining the reasonableness of a fiduciary's discretionary decision" (citing *Booth*, 201 F.3d at 342–43)). We reconcile the two lines of cases by viewing the *Booth* factors as more particularized statements of the elements that constitute a "de-

"Substantial evidence is more than a scintilla, but less than a preponderance." *Hensley v. Int'l Bus. Machs. Corp.,* 123 Fed.Appx. 534, 537 (4th Cir.2004) (citing *Newport News Shipbuilding & Dry Dock Co. v. Cherry,* 326 F.3d 449, 452 (4th Cir. 2003)).

### DISCUSSION

Plaintiff makes several arguments to support her assertion that the Plan administrator's decision to terminate her benefits was an abuse of discretion. However, before addressing the arguments in this case, the court will further review the decisions made by the administrator and the medical evidence in the record.

### A. Plaintiff's First Level Appeal

As noted, Plaintiff appealed the administrator's decision to terminate benefits on May 18, 2006, and she indicated that she was enclosing her medical records for the period October 1, 2004, to present and her Social Security Award Notice. (AR 00076.) After granting Plaintiff an extension of time in which to file additional materials regarding her appeal, the administrator submitted the Plaintiff's entire file to Robert N. Polsky, Board Certified in Psychiatry, and Robert Y. Pick, Board Certified in Orthopedic Surgery, for independent review. (AR 00426, 00068–75.) In his July 14, 2006, report, Dr. Polsky stated, "Objectively, Ms. Harley is noted to be free of suicidal or homicidal ideation, parasuicidal behaviors, or actual evidence of psychosis or mania." (AR 00070.) In response to the question as to whether, based on the documentation, Ms. Harley is "disabled from the ability to perform any occupation," Dr. Polsky's report states,

Based on the documentation provided, from a psychiatric perspective, Ms. Har-

ley is not found to be disabled from the ability to perform any occupation.

Ms. Harley is consistently noted to be free of suicidal ideation, parasuicidal behaviors, homicidal ideation, or mania. While reporting auditory and visual hallucinations, there is no objective data in any of the medical records submitted that would indicate Ms. Harley to present as one who is psychotic. Her thought processes are throughout always noted to be logical and coherent and she is consistently noted to show no evidence objectively of having auditory or visual hallucinations.

On mini-mental status examination, she has consistently scored between 27 and 28 out of 30, which indicates no cognitive impairment and does not substantiate Ms. Harley's self-report of poor concentration and memory. Of great concern is the documentation in which it is indicated that Ms. Harley is seeking disability and has been fabricating findings, particularly in terms of neurological eye examination.

**RATIONALE:**

From a psychiatric perspective, there is insufficient amount of objective evidence to support that Ms. Harley is disabled, and therefore, is able to work in any occupation.

(AR 00070–71.) Dr. Pick's assessment, also dated July 14, 2006, states,

In summary based on review of the voluminous file, there is no orthopedic basis or validation that the claimant is unable to engage in sedentary/light category work activities on a fulltime basis.

**RATIONALE:**

The medical information notes a 48–year–old woman with multiple complaints. There is paucity of objective

---

liberate, principled reasoning process" and "substantial evidence"....

*Donnell v. Metro. Life Ins. Co.,* 165 Fed.Appx. 288, 294 n. 6 (4th Cir.2006).

findings in the records reviewed. Orthopedically, there is no validation or documentation that she is unable to engage in fulltime work activities in the sedentary/light category.

(AR 00075.)

In a letter dated July 19, 2006, the Plan's administrator indicated that it was denying Plaintiff's appeal. (AR 00066.) The letter referred to the reports of Doctors Polsky and Pick and indicated that neither doctor found "evidence of observable clinical findings" that would preclude Plaintiff from the ability to sustain gainful employment. (AR 00066–67.)

**B. Plaintiff's Second Appeal**

On September 15, 2006, Plaintiff filed a second appeal. (AR 00064.) The Plan administrator submitted Plaintiff's file to five different physicians: Dr. Parcells, American Board Certified in Neurology; Dr. Silver, Board Certified in Orthopedic Surgery; Dr. Klein, Board Certified in Otolaryngology; Dr. Goldman, American Board Certified in Psychiatry and Neurology; and Dr. AlShathir, Board Certified in Physical Medicine and Rehabilitation. (AR 00039–60.) Dr. Parcells opines,

> Neurological examination on the records available from 1998 to 2006 never showed an abnormality. There were some findings that were noted to be factitious by Dr. Benoit on examination. MRI of the brain on a number of occasions was normal.... From a neurologic perspective, the employee is not disabled from her regular job as of 01/01/06 to current.
>
> . . .
>
> There are no abnormal clinical findings on examination from a neurologic perspective contained in the medical record that would impact the employee's ability to function. There is a history of chronic headaches which are subjective associated with multiple other clinical

symptoms including neck pain, arm pain and back pain as well as psychiatric symptoms which is being appropriately reviewed by other specialties. From a neurologic perspective, there is no documentation of any specific neurological abnormality that would impair function.

> . . .
>
> There are no abnormal objective findings. The neurological examination was repeatedly normal. MRI is normal. There were no findings supporting inability to perform job duties.
>
> **RATIONALE:** From a neurologic perspective, the claimant complains of chronic daily headaches for many years. There is no documentation of how these headaches would impair her function. There are associated other factors including sort of fictitious findings on neurological examination on one occasion by Dr. Benoit. There were no objective abnormal neurological examination and MRI was normal x2. Thus from a neurologic perspective, the employee was not disabled during her regular job as of 1/01/06 to current.

(AR 00043–44.) Dr. Klein found that while Plaintiff may have had some problems with sinusitis and nasal stuffiness, from an otolaryngology perspective, "there is no clinical documentation available for review from the treating providers that clearly details any significant or severe positive objective findings or significant severe functional limitations occurring that would have prevented a return back to work January 1, 2006 forward." (AR 00048.)

Dr. Goldman reviewed Plaintiff's file solely from a psychiatric perspective, and he found that psychiatric disability had not been established. He stated,

> Based on page by page review of this rather extensive record, psychiatric disability for the dates in question is not established. A longitudinal review of

this record finds a history of deceitful behavior as well as poor compliance with medication.... She was not noted to be suicidal, homicidal, or psychotic. There are absolutely no data detailing loss of global functionality.... It is not clear if she cooks, cleans, drives, or manages her finances. What is clear, however, is that she returned from a vacation, a cruise.... An exhaustive review of this record reveals no data consistent with severe psychopathology. At no time, is she objectively noted to be hallucinatory or psychotic in any other sense. These data clearly do not support psychiatric disability for the dates in question. It is unclear why Ms. Harley is not working.

(AR 00008.) Dr. Al–Shathir reviewed Plaintiff's file from a physical medicine and rehabilitation perspective and concluded that Plaintiff is not disabled. (AR 00053.) With respect to the results of an MRI, Dr. Al–Shathir states, "The reported cervical MRI changes are clinically insignificant since they are commonly seen in working asymptomatic population, not accompanied by neurological deficit, electrophysiological changes, loss of ROM or loss of function." (AR 00054.) His report also states,

There are no documented objective findings supporting inability to perform jobs [sic] duty, the reported cervicalgia and dystonia are not specifically disabling diagnosis with normal neurological examination, no documented loss of ROM or loss of function. The reported headache existed since age 18 and she was able to work with it.

(AR 00054.)

Dr. Silver also concluded that Plaintiff was not disabled "from an orthopedic musculoskeletal standpoint." (AR 00058.) While he noted the discogenic disc disease of the cervical spine, he opined that it was consistent with her age and indicated that there had been no documentation of loss of functionality of the cervical spine or upper extremities bilaterally. (AR 00059.) His opinion further states,

From an orthopedic standpoint, the musculoskeletal system for all intended purpose is virtually within normal limits. The discogenic disc disease of the cervical spine although the claimant has numerous subjective complaints are not related to the discogenic disc disease.... The claimant's subjective complaints of lower back pain are not related to the minimal discogenic disc disease at L5–S1. The claimant has no documentation objectively to substantiate discogenic disease of the cervical spine causing her neck pain. The claimant has no documentation of any objective findings to substantiate that the subjective complaints of low back pain are related to the discogenic disease of the lumbosacral spine.... The claimant's subjective complaints are not substantiated by objective clinical findings that would preclude her from being gainfully employed and being fit for full duty including heavy manual labor. There is no loss of functionality of the entire vertebral spine. There is no loss of functionality of the upper or lower extremities bilaterally. There are no focal neurological deficits in the upper or lower extremities bilaterally. The claimant has for all intended purposes, a normal musculoskeletal examination ...

(AR 00059–60.)

Based on the determinations of these five physicians, it was recommended that the termination of benefits be upheld. (AR 00010.) Beth Strong, a member of the Disability Review Committee which is responsible for making final long term disability determinations on appeal, made the entire file available to the Committee for review. (AR 01694–97.) Strong reviewed the file and noted that Plaintiff had submitted the affidavit of Sharon Shealy, a

certified family nurse practitioner, after the administrator had submitted the Plaintiff's file for independent physician review. (AR 01694–97, 00023–26.) Nurse Practitioner Shealy's affidavit indicates that Plaintiff "suffers from migraine headaches, chronic cervicalgia with cervical dystonia, low back pain, depression, and anxiety." (AR 00023.) Her affidavit also opines that Plaintiff is disabled:

> It is my opinion, based upon my medical education and experience and based upon my specific knowledge of Ms. Harley's problems and treatment history that she is and has been completely and totally disabled from performing any occupation on a full-time basis. I render my opinion based upon the cumulative effect of Ms. Harley's above described physical problems, the subjective symptoms she suffers, and the side effects of her prescription medications. It is my opinion that she has been so disabled since she ceased working in 1998 and that she will remain so indefinitely into the future.

(AR 00026.) Strong requested the administrator provide the affidavit to Drs. Parcells, Klein, Goldman, Al–Shathir, and Silver to determine if the affidavit changed their opinions. (AR 01707–08.) The administrator obtained addendum reports from each of the five physicians and provided them to the Committee. (AR 00028–38.) The physicians noted that Ms. Shealy's affidavit did not alter their earlier opinions because while the affidavit outlined many of Plaintiff's subjective symptoms present in the previously reviewed records, it did not provide abnormal objective findings that would change their opinions. (AR 00028–38.)

The Disability Review Committee met on February 16, 2007, to consider Plaintiff's final appeal. (AR 00013.) The Committee unanimously determined that termination of Plaintiff's long term disability benefits was appropriate based on all the information reviewed, including the opinions of the five independent review physician specialists. (AR 00003.) The administrator then notified Plaintiff of the decision to affirm the termination of benefits via letter dated February 16, 2007. (AR 1620–22.)

## C. Other Medical Evidence in the Record

On July 14, 1998, Plaintiff underwent an MRI of the cervical spine, and the findings were as follows:

> There is loss of normal cervical lordosis. Disc space height is narrowed from C4/5 through C7/T1, most noticeable at C5/6. Mild posterior steophytes are seen from C4/5 through C6/7. Marrow and spinal cord signal are within normal limits.
>
> [B]road based disc bulge is present from C3/4 through C6/7. There is mild flattening of the spinal cord at these levels . . .
>
> Spondylosis produces mild foraminal stenosis on the right at C3/4 and on the left at C4/5 and C5/6.

(AR 00204–05.) On September 20, 2001, Plaintiff had an MRI of the cervical spine, and the MRI indicated "[i]ntravertebral disk disease C3–4, C6–7 with left paracentral disk herniation at C3–4 resulting in mild left neural foraminal stenosis." (AR 00386.)

On October 25, 2002, Dr. Edzard Ellerkmann of the Pain Management Clinic assessed Plaintiff as having cervical radiculopathy with documented C3–4 disc herniation, myofascial neck pain, and chronic headaches. (AR 00397.) He indicated that Plaintiff received trigger point injections into her right shoulder in June but that they did not help alleviate Plaintiff's pain. (AR 00396.) He also indicated that her "symptoms are clearly associated to cervical radiculopathy." (AR 00397.) An

assessment in January of 2004 by Dr. Nivens indicated "[p]robable discogenic and/or radicular pain." (AR 00342.)

On November 8, 2002, Cashton B. Spivey, Ph.D., a licensed clinical psychologist, examined Plaintiff. (AR 00156–58.) He indicated Plaintiff "obtained a score of 28 out of a possible 30 points on the mini mental state examination." (AR 00158.) He also indicated that Plaintiff met the criteria for the following diagnoses: major depressive episode, generalized anxiety disorder, and panic disorder without agoraphobia. (AR 00158.) He also indicated that Plaintiff obtained a Global Assessment of Functioning ("GAF") score of 50, which indicates severe symptoms or any serious impairment in social, occupational, or school functioning. (AR 00158.)

Dr. Mark Beale, Board Certified in Psychiatry, examined and evaluated Plaintiff on October 5, 2004 as an independent reviewer. (AR 00882–97.) He indicated Plaintiff's current GAF score was 40, and he opined that Plaintiff was disabled:

> The plaintiff is currently considered "totally disabled and unable to do any gainful work" due to her depression, psychosis, panic disorder and various physical problems resulting from her neck injury and pain. The diagnoses are major depressive disorder, panic disorder, generalized anxiety disorder and the psychosis associated with her major depressive disorder. These things, in addition to her daily poor functioning and mild memory impairment, lead to significant discomfort, including daily panic attacks. These symptoms severely limit her ability to function in the workplace.

(AR 00893–95.)

On March 9, 2006, Plaintiff saw Dr. Cary Fetcher, who works with pulmonary and critical care medicine and sleep related disorders. (AR 00431.) The "conclusions" section of his report states,

1. Moderate occupational bronchitis and sinusitis. According to the AMA Guide, Fifth Edition, Page 260, her sinus abnormalities appear to be relatively severe. In fact, I suggest getting a CT of the sinuses and consider surgical intervention to reduce headaches which have led to full impairment. I place her sinus condition as part of her dyspnea on exertion at 15% of the whole body.

2. Her pulmonary condition based on pulmonary function testing including and described on page 107 including forced vital capacity as class II impairment and diffusion abnormality as a class III impairment at approximately 25% of the whole person.

3. She does have sleep abnormalities which I believe are compounded by her sinus disease and does cause reduced daytime alertness and a sleep pattern such that the individual can perform most activities of daily living. It is rated at only 5% impairment of the whole person.

(AR 00433.) Considering these factors in combination, Dr. Fetcher opined that these conditions represented "a 39% impairment of the whole body." (AR 00433.)

On August 22, 2006, Plaintiff was evaluated by Dr. Paul Mazzeo of Coastal Neurology, P.A. (AR 01109.) The "Impression/Plan" section of his report indicates Plaintiff has "[t]ransformed migraine with chronic daily headaches complicated by chronic affective disorder." (AR 01110.)

**D. Plaintiff's Arguments**

In her Motion for Judgment, Plaintiff asserts Defendant abused its discretion "by improperly relying upon reviewing physicians' opinions that are clearly flawed and not based upon a deliberate principled reasoning process," specifically pointing to the opinions of Drs. Polsky, Goldman, and Silver. (Pl.'s Mot. at 17.) Plaintiff next

asserts (1) the reviewing physicians ignored crucial parts of the record and (2) Defendant's repeated assertions that Plaintiff's complaints are not substantiated by objective clinical findings demonstrate "how strained and unreasonable the plan's denial really is." (Pl.'s Mot. at 20.) Plaintiff asserts that she has submitted the results of two MRIs, "which fully provide objective findings of Plaintiff's extensive medical problems." (Pl.'s Mot. at 20.) Plaintiff also opines that Defendant's assertions that there is no objective evidence in the record indicates how "strained" and "unreasonable" the denial is because Defendant paid benefits for seven years. (Pl.'s Mot. at 20.)

Plaintiff argues Defendant's denial is contrary to the Supreme Court's opinion in *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003). While acknowledging that the administrator "is not required to defer to Plaintiff's treating physician or to approve Plaintiff's claim simply because her treating physicians opine that she is disabled," the administrator "cannot completely ignore a treating physician's opinion, especially where it is supported by objective medical evidence." (Pl.'s Mot. at 21.)

Plaintiff further argues Defendant abused its discretion by denying Plaintiff benefits after seven years when "there is nothing in the record that indicates … Plaintiff's condition has changed, improved, or differed in any way from the previous 7 years when Defendant did find Plaintiff disabled." (Pl.'s Mot. at 24–25.) Plaintiff also asserts Defendant abused its discretion by (1) considering each of Plaintiff's medical problems separately instead of her condition as a whole, (2) relying in part on an opinion issued seven years before its denial of benefits,[3] and (3) relying on an opinion that treats Plaintiff as a statistic as opposed to an individual person. (Pl.'s Mot. at 25–28.)

### E. Defendant's Arguments [4]

Defendant argues the administrator's decision should be upheld because it was reasonable. (Def.'s Mot. at 16.) Defendant states that the administrator "secured independent physician review of Plaintiff's medical records by seven different independent review physicians to determine whether Plaintiff remained eligible for LTD benefits." (Def.'s Mot. at 17.) Defendant asserts the administrator allowed Plaintiff several extensions of time in which to submit additional medical records, "even where Plaintiff's submission of additional information required supplemental opinions from independent physician reviewers." (Def.'s Mot. at 17.) Defendant next argues its decision is supported by substantial evidence. Defen-

---

**3.** The opinion to which Plaintiff refers is that of Dr. Carol Benoit, a neurologist. (AR 00215.) Dr. Benoit saw Plaintiff on November 3, 1998, and Dr. Benoit's notes state, This person is quite deceitful; she gave us an insurance card which had been terminated 10–1–98…. Visual field testing revealed severe tunnel vision at near and at far; the exam is patently false, since her eye, at times, did flick to my finger long before she admitted seeing it. She admits to only macular vision at times, and there is no significant improvement at a distance. This finding is always factitious….

….

Patient appears to be disability seeking. I wonder if she has also been drug seeking in the past. I told her that it is unlikely that I can help her, and I do not need to see her back.

(AR 00215–16.)

**4.** Defendant also submitted a Response in Opposition to Plaintiff's Motion for Judgment and made several arguments therein. The court will address those arguments while evaluating Plaintiff's arguments.

dant states, "A plan administrator does not abuse its discretion when it terminates a claimant's LTD benefits based upon a lack of objective medical evidence of disability." (Def.'s Mot. at 17.) Defendant highlights that seven independent review physicians determined the objective medical findings did not support continued disability. (Def.'s Mot. at 19.) Defendant also asserts that both independent reviewers certified in psychiatry found that there was no objective indication in Plaintiff's records suggesting psychosis and that "there is no current opinion from a Board Certified Psychiatrist in Plaintiff's records indicating psychiatric disability." (Def.'s Mot. at 19.)

## F. Analysis

Plaintiff first argues Defendant abused its discretion by improperly relying on physician's opinions that are clearly flawed and are not based on a deliberate and principled reasoning process. Defendant argues the physicians' opinions were not clearly erroneous. (Resp. in Opp'n at 2.)

In *Donovan v. Eaton Corp., Long Term Disability Plan,* No. 6:05–217–HMH (D.S.C. Oct. 6, 2005), *aff'd* 462 F.3d 321 (4th Cir.2006), the district court determined the plan administrator's decision to terminate long-term disability benefits to the plaintiff constituted an abuse of discretion under the modified abuse of discretion standard. The plan relied on notes that indicated the plaintiff's condition was improving, but the district court found the notes were not substantial evidence that the plaintiff was not disabled because these notes were "completely silent" regarding the plaintiff's ability to work. (Order at 10.) The plan also relied on Dr. Welshofer's April 2004 statement that the plaintiff could perform sedentary work with certain limitations, even though the April 2004 statement contradicts his affidavit of August 2004 which stated that the plaintiff had been completely and totally disabled since 1993. (*Id.*) The court found the plan's "wholesale disregard of Dr. Welshofer's affidavit in favor of his earlier April 2004 statement" was unreasonable because his April 2004 statement was based on incomplete information. (*Id.* at 12–13.) The court noted that Dr. Welshofer discovered in July 2004 that the plaintiff had cervical back problems that caused pain in the plaintiff's neck and right arm. (*Id.* at 11.) While the plan argued the affidavit lacked objective evidence to support his opinion that the plaintiff was disabled, the court disagreed. (*Id.*) It noted the plaintiff's July 2004 radiology reports that revealed she had stenosis, spinal cord compression, right median nerve entrapment in her wrist, and R C6 radiculopathy. (*Id.*) The court thus concluded his affidavit was "entitled to substantially greater weight than his April 2004 statement, which was based on incomplete information," and that his April 2004 statement was not substantial evidence of her ability to work full-time. (*Id.* at 11–13.)

The plan in *Donovan* also argued that the peer reviews and independent medical review supported its decision to deny benefits. (*Id.* at 14.) The district court stated,

> In the case at bar, the peer reviews and the physician review were performed solely from the record without ever examining [the plaintiff]. Further, only Dr. Wallquist and the independent physician reviewer considered the most recent medical evidence, from July to September 2004, regarding Donovan's condition which required her to undergo a fifth back surgery. As such, the two peer reviews that are based on incomplete information are not entitled to as much weight as the opinions based on a complete record.

The opinions of the final peer reviewer, Dr. Wallquist, and the independent

medical reviewer are the only opinions based on complete information which allege that [the plaintiff] has not been continuously and totally disabled. In the opinion of Dr. Wallquist and the independent physician reviewer, [the plaintiff's] fifth back surgery was disabling. However, both found that she was not disabled from March to September 2004.... The Plan argues that [the plaintiff] has not been continuously disabled because, as of March 1, 2004, there was substantial evidence that she was not disabled from any occupation. The Plan essentially argues that the medical evidence from July to September 2004 is irrelevant to its February 2004 denial of [the plaintiff's] LTD benefits because it was not known in February 2004.

The Plan's argument defies logic. The Plan unreasonably disregarded Dr. Welshofer's affidavit and the medical records regarding [the plaintiff's] condition from July 2004 through September 2004 in evaluating [the plaintiff's] LTD benefits claim. [The plaintiff's] worsening condition was discovered in July 2004 during the appeals process. However, the spinal canal stenosis, spinal cord compression, right median nerve entrapment in her wrist, and R C6 radiculopathy did not appear suddenly in July 2004.... As [the plaintiff's] counsel points out, the Plan ignores the fact that [the plaintiff] clearly must have suffered from her significant problems which necessitated surgery *before* she actually had the surgery.

(*Id.* at 14–16.) It thus seems clear that a plan administrator abuses its discretion when it relies on erroneous information. *See Donovan*, 462 F.3d at 329 (finding the "wholesale disregard" of an affidavit in favor of an earlier statement based on

incomplete information was erroneous); *see also White v. Sun Life Assurance Co. of Can.*, 488 F.3d 240, 254–55 (4th Cir. 2007) (concluding a plan abused its discretion when it justified a denial of benefits based on a conflict among treating physicians when in fact no conflict existed).

 The court will thus inquire as to whether Defendant, in denying Plaintiff's claim for long term disability benefits, relied on physicians' opinions that were clearly erroneous. Plaintiff first points to Dr. Polsky's opinion that there is insufficient objective evidence that Plaintiff is disabled from a psychiatric perspective and Dr. Goldman's statements that (1) there were no data detailing loss of global functionality, (2) there were no data consistent with severe psychopathology, and (3) she is not objectively noted to be hallucinatory or psychotic in any other sense.[5]

The record reveals that Plaintiff's GAF score was documented on at least two occasions. On November 8, 2002, Cashton B. Spivey, Ph.D., documented Plaintiff's GAF score at 50, and on October 5, 2004, Dr. Beale, an independent reviewer, documented Plaintiff's GAF score at 40. (AR 00158, 00894.) Despite Dr. Goldman's statement that there were no data detailing loss of global functionality, Defendant highlights the word "detailing," seemingly arguing that while Dr. Goldman did not actually mention the GAF scores themselves, his statement that there were no data "detailing" a loss of global functionality is correct. While Dr. Goldman did not specifically mention the GAF scores themselves, he did indicate that Dr. Spivey opined Plaintiff met the diagnostic criteria for major depressive disorder, generalized anxiety disorder, and panic disorder without agoraphobia. (AR 00050.) He also referred to Dr. Beale's "extensive psychi-

---

**5.** Plaintiff complains about Dr. Polsky's opinion but without specificity, and the court fully assesses Dr. Silver's opinion within the body of this Order.

atric report," in which Dr. Beale found Plaintiff disabled due to depression, psychosis, and impaired cognition. (AR 00050.) While Dr. Goldman did not specify the GAF scores, he clearly disagreed with the assessments of Drs. Spivey and Beale, noting that Plaintiff "was seen with the frequency quite inconsistent with psychiatric severity or acuity or debility." (AR 00051.) Furthermore, while he indicated uncertainty regarding her daily routine, he noted she was able to go on a cruise. (AR 00051.)[6] Thus, while Dr. Goldman's opinion does not specifically mention Plaintiff's GAF scores, the court concludes the Defendant did not abuse its discretion in relying on that opinion.

■ Plaintiff next argues Defendant abused its discretion by relying on physicians' opinions that ignore crucial parts of the record. (Pl.'s Mem. in Supp. at 20.) The peer reviewers consistently refer to the lack of objective findings, and Plaintiff asserts that there are objective findings that substantiate her medical problems. (Pl.'s Mem. in Supp. at 20.) Plaintiff asserts that she has submitted two MRI results "which fully provide objective findings of Plaintiff's extensive medical problems." (Pl.'s Mem. in Supp. at 20.) Defendant counters,

> In contrast to Plaintiff's unsupported assertions, the record is replete with **normal** test results-Plaintiff's mini mental status examinations, neurological examinations, EMG, MRIs of the brain, MRI of the lumbar spine, electrophysiological studies, MRA, and nerve conduction velocity results were all within normal limits. Plaintiff's

MRI of the cervical spine revealed some disc disease, but the results were within normal limits for a person Plaintiff's age and consistent with individuals who are asymptomatic and working. Absent accompanying neurological deficit, loss of range of motion, loss of function, or electrophysiological change, Plaintiff's cervical MRI lacks clinical significance.

(Resp. in Opp'n at 5.)

There are two MRI results of the cervical spine that are not normal. The July 1998 MRI of the cervical spine indicated (1) loss of normal cervical lordosis, (2) narrowed disc space height, (3) mild posterior steophytes, (4) broad based disc bulge from C3/4 through C6/7, (5) mild flattening of the spinal cord from C3/4 through C6/7, and (6) mild foraminal stenosis on the right at C3/4 and on the left at C4/5 and C5/6. (AR 00204–05.) The September 2001 MRI indicated some intravertebral disc disease "resulting in mild left neural foraminal stenosis." (AR 00386.) Dr. Al–Shathir and Dr. Silver considered this evidence when they issued their opinions concluding that Plaintiff was not entitled to long term disability benefits. Dr. Al–Shathir opined that the "reported cervical MRI changes are clinically insignificant since they are commonly seen in working asymptomatic population, not accompanied by neurological deficit, electrophysiological changes, loss of ROM or loss of function." (AR 00054.) Dr. Silver noted the discogenic disc disease but stated, "There is no documentation of any loss of range of motion of the cervical spine of any clinical significance. There is no documentation of

---

**6.** Plaintiff also argues Dr. Goldman's opinion is erroneous because it states, "At no time, is she objectively noted to be hallucinatory or psychotic in any other sense." (AR 00051.) While there is evidence in the record that Plaintiff reported having hallucinations in 2004, even Dr. Beale's report indicates that

Plaintiff "reports" hallucinations. (AR 00884.) Given Dr. Goldman's statement that a "longitudinal review of this record finds a history of deceitful behavior as well as poor compliance with medication," the court cannot conclude that his report was clearly erroneous. (AR 00051.)

any loss of functionality of the cervical spine." (AR 00058.)

While Plaintiff asserts Defendant has ignored objective medical evidence, it appears that Doctors Al–Shathir and Silver considered the evidence but found it failed to indicate disability. Certainly there is contradictory evidence in the record. For example, Dr. Ellerkmann determined that Plaintiff had "[c]ervical radiculopathy with documented C3–4 disc herniation," and he indicated that her symptoms of pain "are clearly associated to cervical radiculopathy." (AR 00397.) However, it is not an abuse of discretion "for a plan fiduciary to deny disability pension benefits where conflicting medical reports were presented." *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 606 (4th Cir. 1999); *see also Ellis v. Metro. Life Ins. Co.*, 126 F.3d 228, 234 (4th Cir.1997). Thus, while Plaintiff disagrees with Defendant's determination that Plaintiff is not disabled, such disagreement does not indicate that Defendant abused its discretion.

Plaintiff's third argument is that Defendant abused its discretion by relying on reviewing physicians' opinions which ignored Plaintiff's treating medical providers' opinions. (Pl.'s Mot. for J. at 21.) Plaintiff states,

> Plaintiff's treating physicians provided detailed opinions fully outlining Plaintiff's multiple medical conditions. The opinions are obviously supported by objective medical tests. There is absolutely no indication in the record that the plan, its review committee or its experts in any way gave any meaningful consideration to Plaintiff's treating physicians' opinions. Plaintiff is fully aware that the defendant plan is not required to defer to Plaintiff's treating physician or to approve Plaintiff's claim simply because her treating physicians opine that she is disabled. However, the Supreme

Court in *Nord* also cautioned that an administrator cannot completely ignore a treating physician's opinion, especially where it is supported by objective medical evidence.

(*Id.*) Defendant counters that Plaintiff is merely paying "lip service" to the Supreme Court's opinion in Nord and that the independent physicians who reviewed Plaintiff's records "did consider the opinions of Plaintiff's treating physicians, as is evident from the detailed reports of Drs. Polsky, Pick, Goldman, Parcells, Klein, Al–Shathir, and Silver; they simply disagreed with Plaintiff's Nurse Practitioner's and Pulmonary and Critical Care physician's conclusion that Plaintiff was unable to work." (Resp. in Opp'n at 7.)

In *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003), the Supreme Court held the administrators of plans covered by ERISA "are not obligated to accord special deference to the opinions of treating physicians." *Nord*, 538 U.S. at 825, 123 S.Ct. 1965; *see also Elliott v. Sara Lee Corp.*, 190 F.3d 601, 607–08 (4th Cir.1999). While the Supreme Court indicated that plan administrators "may not arbitrarily refuse to credit a claimant's reliable evidence," the Court also stated that "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Nord*, 538 U.S. at 834, 123 S.Ct. 1965.

The court agrees with Defendant. The plan administrator did not ignore evidence from Plaintiff's treating physicians—rather, it simply relied on the opinions of physicians who disagreed. As noted above, it

is not an abuse of discretion to deny benefits when conflicting medical reports exist.

■■■■■ Plaintiff argues the Defendant abused its discretion by denying Plaintiff's benefits because it paid benefits for seven years, and there is no evidence in the record of a change in Plaintiff's condition. (Pl.'s Mem. in Supp. of J. at 24.) Defendant insists this argument is without merit because this argument "impermissibly attempts to shift the burden of proof regarding disability to the Defendant." (Resp. in Opp'n at 10.) Plaintiff has the burden of proving that she is disabled, and the plan indicates that benefits will stop if she is no longer disabled. (AR 001655–56.) Even though the Plan is terminating benefits that it had been paying, the appropriate standard of review remains abuse of discretion. *See Tumbleston v. A.O. Smith Corp.*, 28 Fed.Appx. 231, 235 (4th Cir.2002) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)). Furthermore, the fact that benefits were initially awarded does not mean that a termination of these benefits constitutes an abuse of discretion. *Hensley v. Int'l Bus. Machs. Corp.*, 123 Fed.Appx. 534, 538 (4th Cir.2004); *see also Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 273–74 (5th Cir.2004) ("The district court committed legal error when it concluded that, once the fiduciary approves entitlement to LTD benefits, subsequent termination of those benefits would have to be supported by substantial evidence of a *change in the employee's condition.*"). Thus, Defendant did not abuse its discretion in terminating benefits simply because it paid benefits in the past.

Plaintiff next argues that the Defendant abused its discretion because it considered each of Plaintiff's medical problems separately instead of her condition as a whole. (Pl.'s Mem. in Supp. of J. at 25.) Defendant asserts that Plaintiff's argument is without merit because "the record specifi-

cally states that the Plan Administrator based its decision on review of **all information** in the administrative record." (Resp. in Opp'n at 14.) However, reviewing the pages of the administrative record to which Defendant cites, the court cannot agree. What is clear from the record is that the Committee had available to it all information in the record when it made its decision. (AR 01696.) The denial letter written to Plaintiff references the five independent reviewers and indicates these individuals reviewed the evidence from the perspective of their speciality. (AR 01620–22.)

In *Guthrie v. National Rural Electric Cooperative Association Long–Term Disability Plan*, 509 F.3d 644 (4th Cir.2007), the plan administrator denied the plaintiff's claim for long term disability benefits, and on appeal, the plaintiff argued the administrator "denied her a 'full and fair review' by ignoring compelling evidence that she was limited by a number of physical and mental ailments in addition to occupational asthma." *Guthrie*, 509 F.3d at 651. The plaintiff argued the administrator improperly relied on pulmonologists "who did not adequately address her other health conditions" and never considered "ample evidence supporting her disability claim based on other conditions." *Id.* at 651. The court agreed with the plaintiff:

> Given that CBA was aware of the extent to which Guthrie's other ailments *were disabling*, we cannot conclude that CBA's reliance on the opinions of pulmonologists was reasonable. Under the circumstances, CBA should have referred Guthrie's appeal to an internist or primary care physician to assess her other ailments. Without question, CBA honed in on Guthrie's pulmonary issues, which effectively resulted in denying her claim based on occupational asthma alone. The record makes clear that on appeal the basis for Guthrie's claim for

LTD benefits included far more than her occupational asthma. *Moreover, the record is bereft of any evidence demonstrating that Guthrie's other ailments were not disabling.* Thus, CBA's failure to consider Guthrie's constellation of medical issues denied her a full and fair review and, consequently, its decision to deny benefits was not based on substantial evidence.

*Id.* at 652 (emphasis added).

In the case *sub judice,* unlike in *Guthrie,* Defendant has evaluated all the bases for Plaintiff's claim for disability benefits. While Plaintiff disagrees with their assessments, Defendant had physicians certified in psychiatry, orthopedic surgery, neurology, otolaryngology, and physical medicine and rehabilitation perform independent reviews. The record is thus not bereft of evidence demonstrating that certain ailments were not disabling. The court finds Defendant's decision to terminate Plaintiff's long term disability benefits comports with *Guthrie.*

Finally, Plaintiff argues Defendant abused its discretion by relying on an opinion issued seven years before denying Plaintiff's benefits and by relying on an opinion that does not treat Plaintiff as an "individual" but instead treats her as a "statistic." (Pl.'s Mot. for J. at 28.) The seven-year-old opinion Plaintiff refers to is that of Dr. Benoit, who indicated that Plaintiff was "deceitful" and potentially "disability seeking." (AR 00215–16.) Plaintiff seems to argue that because none of the other doctors indicated Plaintiff was deceitful, Defendant abused its discretion by relying on independent reviewers who noted this in their opinion. As noted above, however, Defendant does not abuse its discretion in denying disability benefits in the face of conflicting reports. *See, e.g., Elliott v. Sara Lee Corp.,* 190 F.3d at 606. Nor is the court convinced the Defendant abused its discretion in relying on the re-

port of Dr. Al–Shathir; according to Plaintiff, Dr. Al–Shathir's opinion treats Plaintiff like a statistic, not an individual. (Pl.'s Mot. for J. at 28–29.) Dr. Al–Shathir did opine that the results of Plaintiff's MRI were clinically insignificant because the changes are commonly seen in the asymptomatic working population. (AR 00054.) However, the court finds it helpful to review Dr. Al–Shathir's statement in context. Dr. Al–Shathir opined,

> The reported cervical MRI changes are clinically insignificant since they are commonly seen in working, asymptomatic population, not accompanied by neurological deficit, electrophysiological changes, loss or ROM or loss of function.

(AR 00054.) Viewed in context, Dr. Al–Shathir did not opine the changes on the MRI were insignificant simply because other people who were capable of working also had such changes; his report appears to indicate there is no functional loss associated with the changes on the MRI. The court thus finds Defendant did not abuse its discretion in relying on Dr. Al–Shathir's opinion.

In summary, the court finds the Defendant's decision to terminate Plaintiff's long term disability benefits was the product of a deliberate, principled reasoning process and is supported by substantial evidence.

### CONCLUSION

It is therefore **ORDERED,** for the foregoing reasons, that Defendant's Motion for Judgment is **GRANTED.** It is further **ORDERED** that Plaintiff's Motion for Judgment is **DENIED.**

**AND IT IS SO ORDERED.**